# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA

FORTRES GRAND CORPORATION,
an Indiana corporation,

        Plaintiff,

  v.

WARNER BROS. ENTERTAINMENT
INC., a Delaware corporation,

        Defendant.

No. 3:12-cv-00535-PPS-CAN

## DEFENDANT WARNER BROS. ENTERTAINMENT INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

**Jenner & Block LLP**
Keith V. Porapaiboon
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

Andrew H. Bart (admitted *pro hac vice*)
919 Third Avenue, 37th Floor
New York, NY 10022-3908
(212) 891-1600

Andrew J. Thomas (admitted *pro hac vice*)
633 W. Fifth Street, 36th Floor
Los Angeles, CA 90071
(213) 239-5100

Dated: December 10, 2012

**TABLE OF CONTENTS**

I.   SUMMARY OF ARGUMENT ............................................................... 1

II.  WARNER BROS.' FILM AND PLAINTIFF'S CLAIMS ..................................... 3

III. MOTION TO DISMISS STANDARDS ................................................... 7

     A.  The Court May Consider The Content Of The Film And The Websites
         Referred To In The Complaint In Deciding This Motion To Dismiss ......... 7

     B.  The Court May Determine At The Pleading Stage That Warner Bros.'
         Film And The Websites Are Protected By The First Amendment And
         Not Actionable As A Matter Of Law ..................................... 8

IV.  WARNER BROS.' USE OF THE PHRASE "CLEAN SLATE" IN A FICTIONAL
     CREATIVE WORK IS FULLY PROTECTED BY THE FIRST AMENDMENT ............. 9

     A.  Warner Bros.' Use Of The Phrase "Clean Slate" Has Obvious Artistic
         Relevance To The Film ................................................ 12

     B.  Warner Bros.' Use Of The Phrase "Clean Slate" Is Not Explicitly Misleading .......... 14

V.   THE *DARK KNIGHT RISES* WEBSITES ARE SIMILARLY PROTECTED
     BY THE FIRST AMENDMENT ..................................................... 16

VI.  WARNER BROS.' USE OF THE PHRASE "CLEAN SLATE" IS NOT
     ACTIONABLE UNDER TRADEMARK OR UNFAIR COMPETITION LAW ............. 18

     A.  Plaintiff's Claims Do Not Allege Actionable Confusion Involving
         Consumer Purchasing Decisions ........................................ 18

     B.  Warner Bros.' Use Of The Phrase "Clean Slate" Is A Classic Fair Use ...................... 23

VII. CONCLUSION ................................................................. 25

i

# TABLE OF AUTHORITIES

<b>Page(s)</b>

**CASES**

*Albany Bank & Trust Co. v. Exxon Mobil Corp.*,
310 F.3d 969 (7th Cir. 2002) ....................................................................................7

*Anti-Monopoly, Inc. v. General Mills Fun Group*,
611 F.2d 296 (9th Cir. 1979) ...................................................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 570 (2007)...........................................................................................7

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) .................................................................................7, 8

*Burnett v. Twentieth Century Fox Film Corp.*,
491 F. Supp. 2d 962 (C.D. Cal. 2007) ......................................................................9

*Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*,
70 F.3d 267 (2d Cir. 1995)......................................................................................23

*Caterpillar, Inc. v. Walt Disney Co.*,
287 F. Supp. 2d 913 (C.D. Ill. 2003) ......................................................................22

*CFM Majestic, Inc. v. NHC, Inc.*,
93 F. Supp. 2d 942 (N.D. Ind. 2000) ................................................................11, 23

*Cher v. Forum Int'l, Ltd.*,
692 F.2d 634 (9th Cir. 1982) ...................................................................................16

*Ciociola v. Harley-Davidson, Inc.*,
552 F. Supp. 2d 845 (E.D. Wis. 2008)................................................................23, 24

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Group, Inc.*,
886 F.2d 490 (2d Cir. 1989).....................................................................................11

*Cooney v. Rossiter*,
583 F.3d 967 (7th Cir. 2009) .....................................................................................7

*Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*,
125 F.3d 28 (2d Cir. 1997)........................................................................................24

*Daly v. Viacom, Inc.*,
238 F. Supp. 2d 1118 (N.D. Cal. 2002) ....................................................................16, 17

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003)...............................................................................................................19

*Davis v. Walt Disney Co.*,
393 F. Supp. 2d 839 (D. Minn. 2005) ...............................................................................21, 22

*Dillinger, LLC v. Electronic Arts Inc.*,
2011 WL 2457678 (S.D. Ind. June 16, 2011) ....................................................11, 12, 13, 15

*Dombrowski v. Pfister*,
380 U.S. 479 (1965)...............................................................................................................9

*E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*,
547 F.3d 1095 (9th Cir. 2008) ..................................................................................... passim

*Eastland Music Group, LLC v. Lionsgate Entm't, Inc.*,
2012 WL 2953188 (N.D. Ill. July 19, 2012).............................................................8, 11, 13

*Eberhardt v. O'Malley*,
17 F.3d 1023 (7th Cir. 1994) ...............................................................................................10

*EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos Inc.*,
228 F.3d 56 (2d Cir. 2000)...................................................................................................23

*Esch v. Universal Pictures Co.*,
97 U.S.P.Q.2d 1237 (N.D. Ala. Nov. 2, 2010) ...............................................................17, 18

*ETW Corp. v. Jireh Publ'g, Inc.*,
332 F.3d 915 (6th Cir. 2003) ....................................................................................10, 11, 12, 16

*Firth v. Yahoo! Inc.*,
2010 WL 4955548 (N.D. Ind. Nov. 30, 2010).......................................................................8

*Gates v. Towery*,
456 F. Supp. 2d 953 (N.D. Ill. 2006) ....................................................................................8

*Ginsburg v. Black*,
192 F.2d 823 (7th Cir. 1951) ................................................................................................8

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
590 F. Supp. 2d 625 (S.D.N.Y. 2008)...................................................................................9

*Groden v. Random House, Inc.*,
61 F.3d 1045 (2d Cir. 1995)................................................................................................16

iii

*Hensley Mfg. v. ProPride, Inc.*,
579 F.3d 603 (6th Cir. 2009) ...................................................................................9

*Jones v. Bock*,
549 U.S. 199 (2007)...............................................................................................7

*Joseph Burstyn, Inc. v. Wilson*,
343 U.S. 495 (1952)...............................................................................................9

*Kelly-Brown v. Winfrey*,
2012 WL 701262 (S.D.N.Y. Mar. 6, 2012) .......................................................9, 24

*KP Permanent Make-Up v. Lasting Impression I, Inc.*,
543 U.S. 111 (2004).............................................................................................23

*L.L. Bean, Inc. v. Drake Publishers, Inc.*,
811 F.2d 26 (1st Cir. 1987)...................................................................................19

*Lane v. Random House*,
985 F. Supp. 141 (D.D.C. 1995) ...........................................................................18

*Lang v. Retirement Living Publ'g Co.*,
949 F.2d 576 (2d Cir. 1991)..................................................................................19

*Louis Vuitton Mallatier S.A. v. Warner Brothers Entertainment Inc.*,
--- F. Supp. 2d ---, 2012 WL 2248593 (S.D.N.Y. June 15, 2012)............................9

*Mattel, Inc. v. MCA Records, Inc.*,
296 F.3d 894 (9th Cir. 2002) ...........................................................10, 11, 15, 18

*Mattel, Inc. v. Walking Mt. Prods.*,
353 F.3d 792 (9th Cir. 2003) ...............................................................................14

*Mid-America Regional Bargaining Ass'n v. Will County Carpenters Dist. Council*,
675 F.2d 881 (7th Cir. 1982) .................................................................................7

*National Life Ins. Co. v. Phillips Publ'g, Inc.*,
793 F. Supp. 627 (D. Md. 1992)............................................................................18

*Nichols v. Moore*,
334 F. Supp. 2d 944 (E.D. Mich. 2004)..................................................................18

*Note Family, Inc. v. Vivendi Universal Games, Inc.*,
2007 WL 2565970 (S.D. Ill. Sept. 4, 2007).......................................................24, 25

*Ocean Bio-Chem, Inc. v. Turner Network Television, Inc.*,
741 F. Supp. 1546 (S.D. Fla. 1990) ......................................................................21

*Packman v. Chicago Tribune Co.*,
  267 F.3d 628 (7th Cir. 2001) ...................................................23

*Page v. Something Weird Video*,
  960 F. Supp. 1438 (C.D. Cal. 1996) ...................................17

*Prestonettes, Inc. v. Coty*,
  264 U.S. 359 (1924) (Holmes, J.) ......................................19

*Reichenberger v. Pritchard*,
  660 F.2d 280 (7th Cir. 1981) .................................................9

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989) ......................................... passim

*Roxbury Entertainment v. Penthouse Media Group, Inc.*,
  669 F. Supp. 2d 1170 (C.D. Cal. 2009) ...............................13

*Ruffin-Steinback v. Depasse*,
  267 F.3d 457 (6th Cir. 2001) ...............................................16

*Schad v. Borough of Mt. Ephraim*,
  452 U.S. 61 (1981) ...................................................................9

*Stewart Surfboards, Inc. v. Disney Book Group LLC*,
  2011 U.S. Dist. LEXIS 155444 (C.D. Cal. May 11, 2011) ...............15

*Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*,
  64 F.3d 1055 (7th Cir. 1995) ..........................................23, 24

*The Romantics v. Activision Publ'g, Inc.*,
  574 F. Supp. 2d 758 (E.D. Mich. 2008) ..............................12

*Thoroughbred Legends, LLC v. Walt Disney Co.*,
  2008 WL 616253 (N.D. Ga. Feb. 12, 2008) ........................18

*University of Alabama Bd. of Trustees v. New Life Art, Inc.*,
  683 F.3d 1266 (11th Cir. 2012) ......................................10, 11

*Vision Center Northwest, Inc. v. Vision Value, LLC*,
  673 F. Supp. 2d 679 (N.D. Ind. 2009) ................................23

*Webceleb, Inc. v. Procter & Gamble Co.*,
  No. 10-CV-2318, --- WL --- (S.D. Cal. Sept. 25, 2012) ..................13

*Wham-O, Inc. v. Paramount Pictures Corp.*,
  286 F. Supp. 2d 1254 (N.D. Cal. 2003) ..............................22

*Whitehurst v. Showtime Networks, Inc.*,
  2009 WL 3052663 (E.D. Tex. Sept. 22, 2009) ......................................................18

*Winters v. New York*,
  333 U.S. 507 (1948) ...............................................................................................9

*Woodard v. Jackson*,
  2004 WL 771244 (S.D. Ind. Mar. 25, 2004) ...............................................8, 11, 15

*Zeocrystal Industries, Inc. v. Fox Broadcasting Co.*,
  923 F. Supp. 132 (N.D. Ill 1996) .........................................................................21

## STATUTES

15 U.S.C. § 1114 ...........................................................................................................19

15 U.S.C. § 1115(b)(4) .................................................................................................23

15 U.S.C. § 1125(a) ......................................................................................................23

15 U.S.C. § 1125(a)(1)(A) ............................................................................................19

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 12 ...............................................................................8

Federal Rule of Civil Procedure 12(b)(6) ......................................................................6

Defendant Warner Bros. Entertainment Inc. ("Warner Bros.") respectfully submits the following Memorandum of Law in support of its motion to dismiss the Complaint filed by plaintiff Fortres Grand Corporation alleging trademark infringement and unfair competition.

## I.   SUMMARY OF ARGUMENT

This lawsuit arises from the use of a common, two-word descriptive phrase – "clean slate" – on a handful of occasions in Warner Bros.' summer blockbuster film *The Dark Knight Rises* to describe a wholly fictitious software program relevant to the plot of the film.  Plaintiff has asserted trademark and unfair competition claims based on the specious theory that such usage of a common phrase will cause consumers, in making actual purchasing decisions, to confuse the fantasy world of "Batman" with Plaintiff's real-world products.  Plaintiff's trademark registration, however, does not endow it with monopoly rights to dictate how the words "clean slate" may or may not be used in films, books, or other creative works.  Because the use of those descriptive words in Warner Bros.' motion picture is fully protected by the First Amendment, Plaintiff's claims must be dismissed.

In 2012, Warner Bros. released *The Dark Knight Rises* (the "Film"), the final chapter in director Christopher Nolan's "Dark Knight" trilogy, which tells the story of the DC Comics fictional hero Batman (and his alter ego, billionaire industrialist Bruce Wayne).  In the trilogy's previous films – *Batman Begins* (2005) and *The Dark Knight* (2008) – Batman joined forces with fictional police lieutenant (and later commissioner) Jim Gordon to defend the fictional Gotham City from the depredations of a series of fictional villains, including The Scarecrow, Two-Face, and The Joker, and a fictional secret society of warriors known as the League of Shadows.  In *The Dark Knight Rises*, Batman must again save Gotham City, this time from a fictional larger-than-life terrorist named Bane.  The action takes place primarily in Gotham, a fictional

metropolis populated by fictional public officials, government agencies, and corporations (like the Wayne family's conglomerate, Wayne Enterprises.)

In the Film, Bruce Wayne/Batman also must contend with a fictitious cat burglar named Selina Kyle (Catwoman), who allies herself with underworld figures but eventually rallies to his side to save the city from nuclear annihilation.  One subplot involves Ms. Kyle's search for a fictional software program that might enable her to erase her identity from government databases throughout the world and allow her to make a new start in life.  Characters in the film describe the program as something that would provide a "fresh start" and a "clean slate."

Plaintiff Fortres Grand sells a computer security program that restores a network computer's original settings after a user logs off.  Fortres Grand has branded its product with the descriptive name "Clean Slate."  In its Complaint, Plaintiff alleges that, following the release of the Film, movie fans and other third parties – via "web pages, tweets, and blog posts" on the Internet – have "questioned" whether the imaginary "clean slate" software depicted in *The Dark Knight Rises* "is real and could potentially work."  Complaint ¶ 24.  On the basis of this Internet speculation by unidentified third parties, who are not alleged to have any connection to Warner Bros., Plaintiff has asserted claims for trademark infringement and unfair competition, claiming this generalized "confusion" has somehow injured its brand.

Plaintiff's claims cannot be reconciled with dispositive authority holding that the First Amendment provides protection to creators of expressive works, like motion pictures, to use references to trademarks – whether intended or unintended – as part of their expression.  Indeed, it is well settled that the mere appearance of a trademark in an expressive work, or in advertising material that describes or depicts the content of the expressive work, is insufficient as a matter of law to state a claim for relief under the Lanham Act or related state unfair competition laws.  In

the leading case in this area, *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), the Second Circuit Court of Appeals held that a film studio had no liability under the Lanham Act for references to the plaintiff's name in a motion picture, where (1) the use of the plaintiff's name had artistic relevance to the film, and (2) the studio did not "explicitly mislead" prospective purchasers as to the source or sponsorship of the film.  Here, the use of the descriptive term "clean slate" has clear relevance to the plot of *The Dark Knight Rises*, and there is no allegation that Warner Bros. misled anyone as to the sponsorship of the Film.

Dismissal of Plaintiff's claims also is mandated by basic principles of trademark law.  As numerous courts have recognized, trademark law protects only against the likelihood (not mere possibility) of confusion among an appreciable number of purchasers of the parties' *actual goods and services*, not against confusion generally or confusion "in the air."  No such actual purchaser confusion is presented by the allegations in the complaint.  Moreover, Warner Bros.' use of the words "clean slate" according to their ordinary English meaning to describe a product that would allow a character to "wipe the slate clean" and make a fresh start in life is a classic fair use that simply is not actionable under trademark or unfair competition law.

Accordingly, because Warner Bros. cannot be subjected to claims under the Lanham Act or state unfair competition law based on its use of the common phrase "clean slate" to describe an imaginary product in a fictional movie, the Complaint should be dismissed in its entirety.

## II.   WARNER BROS.' FILM AND PLAINTIFF'S CLAIMS

*The Dark Knight Rises* is a feature-length motion picture about the fictional world and exploits of the world-famous comic book character Batman.  Though the events in the Film unfold in a realistic manner, the viewer is constantly reminded that the movie is fictional – from the presence of the caped super-hero Batman, to the fictional Gotham City setting, to the

3

fictional businesses (Wayne Enterprises, the GCN television network) and governmental entities (the Gotham Police Department, Blackgate Prison), to the fantastical villains (Bane and the League of Shadows). *See* Warner Bros.' Request for Judicial Notice ("RJN"), Exhibit A.

In the Film, a crippled and reclusive Bruce Wayne must resume his Batman alter ego to defend Gotham City from a new threat – a hulking, masked terrorist named Bane, who seeks to destroy the city with an atomic bomb after presiding over a French Revolution-style reign of terror. The phrase "clean slate" is used only four times during the two hour and forty-five minute Film. It is not used as a brand name or trademark; instead, in each reference the words are used descriptively to explain the operation of a mysterious and unnamed software program.

In *The Dark Knight Rises*, Wayne matches wits with a leather-clad cat burglar with ambiguous motives named Selina Kyle (Catwoman). She steals a valuable piece of jewelry (and Bruce Wayne's fingerprints) from Wayne's mansion. *See* RJN, Ex. A at 1:11:00 – 1:12:40; 1:12:52 – 1:13:22; 1:15:00 – 1:16:10. She then uses the fingerprints to bargain with a nefarious businessman (John Daggett) for the mythical software program. *Id.* at 1:19:08 – 1:21:12. When Daggett's partner won't give it to her, she tries to steal it from Daggett's safe. She and Daggett fight, and during the scuffle she demands: "So where is it – the program, the clean slate?" Daggett describes the program as something that can erase a person's identity in a few minutes from "every database on earth" and calls it "too good to be true." Kyle insists that "Rykin Data took it to prototype stage." Daggett responds, "That's why I bought them. But they had nothing. It was a gangland myth." *See id.* at 1:47:05 – 1:47:23; 1:48:06 – 1:48:18; 1:51:10 – 1:52:56.

Kyle later confesses to Batman that she sold Bruce Wayne's fingerprints to Daggett "for something that doesn't even exist." In a subsequent scene, Wayne tells Kyle that his "powerful friend" (Batman) says that what she wants (the program) does exist. When Kyle later meets

4

Batman, she tells him, "Wayne says you can get me the clean slate."  *See* RJN, Ex. A at 1:54:45 – 1:55:35; 2:05:40 – 2:06:25; 2:10:06 – 2:10:36.  Near the end of the film, Wayne offers Kyle the "clean slate" program in return for her help.  He says that for her, "this isn't just a tool, it's an escape route – you want to disappear, start fresh."  *Id.* at 3:00:40 – 3:01:52.[1]  At the very end of the film, we learn that Ms. Kyle has indeed made a fresh start in life.  *Id.* at 3:34:52 – 3:36:25.

Plaintiff also complains about the use of the phrase "clean slate" on two Internet websites that it claims sought to promote *The Dark Knight Rises* – <www.rykindata.com> and <rykindata.tumblr.com>.  *See* Complaint ¶¶ 22-23.[2]  Both websites portray fictional recreations of the Gotham City universe – including images of fictional police reports concerning Selina Kyle similar to those Bruce Wayne reviews in the Film, a fictional police file labeled "Cat Burglar Investigation," the fictional Rykin Data company that supposedly invented the software that might enable Selina Kyle/Catwoman to erase her criminal history and start over with a "clean slate," a fictitious software patent, and an endorsement from a fictional Gotham City Better Business Bureau (BBB).  *See* RJN, Exhibits B and C (website printouts).[3]

The websites use the phrase "clean slate" descriptively, in reference to the same software program that Catwoman tries to obtain in the Film.  The Tumblr website, for example, features a mock web page for the fictional Rykin Data Corporation, which contains further information

---

[1] In an early scene in the movie, while dancing together at a charity ball, Bruce Wayne suggests to Selina Kyle that she must owe a lot of money to the "wrong people" and urges her to "start fresh."  She responds that "there's no fresh start in today's world."  *See* RJN, Ex. A at 1:33:30 – 1:36:10.

[2] While the Court must accept as true all well-pleaded facts in the Complaint on a motion to dismiss, Warner Bros. in fact does not own or operate either website.

[3] Because the Film and the two websites are referenced in the Complaint and central to its allegations, the Court may consider the content of the Film and the content of the websites in deciding a motion to dismiss under Rule 12(b)(6).  *See* Section III.A, *infra*, and RJN at 1-3.

about the fictional software described in the Film.  The mock web page includes the following statement:  "Rykin Data: Providing Fresh Starts since 2004….  Clean slates are possible…. Have a fresh, clean start."  *See* RJN, Ex. C at 2, 3.  Elsewhere, it notes that "clean slate" is "the informal name for Rykin Data's primary service" and explains that the software "effectively grant[s] the subject a clean slate within the digital world."  *Id.* at 1.  Both websites also contain a fictitious patent for the software, which ascribes the invention to "A. Heiberger, Gotham City." The patent's "Abstract" likewise uses the phrase "clean slate" descriptively, noting again that the supposed invention has the effect of "granting the subject a clean slate within the digital world." RJN, Ex. B, Ex. C at 4.

From its base of operations in Plymouth, Indiana – far from the fantastical world of Gotham – Plaintiff Fortres Grand sells a computer security program that it chose to brand with the descriptive name "Clean Slate."  Complaint ¶¶ 6-7.  According to Plaintiff's website <www.fortresgrand.com/product>, the program "is designed to protect public access computers from malicious or inexperienced users" by restoring the computer "to its original configuration [and] discarding unwanted user changes."  In the Complaint, Plaintiff alleges that, following the release of *The Dark Knight Rises*, movie fans and others on the Internet – through "web pages, tweets, and blog posts" – have "questioned" whether the imaginary "clean slate" program depicted in the Film "is real and could potentially work."  Complaint ¶ 24.  On the basis of this online chatter – by unidentified third parties who are not alleged to have any association with Warner Bros. – Plaintiff has asserted claims for trademark infringement and unfair competition, claiming that this generalized "confusion" either has led consumers to believe that Plaintiff's product now originates from the Warner Bros. film studio or that Plaintiff produced or sponsored Warner Bros.' film *The Dark Knight Rises*.  *See id.* ¶¶ 25-26.

### III. MOTION TO DISMISS STANDARDS

"A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215 (2007). In evaluating the facts alleged in the complaint, a court should not accept legal conclusions or "conclusory allegations unsupported by any factual assertions." *Mid-America Regional Bargaining Ass'n v. Will County Carpenters Dist. Council*, 675 F.2d 881, 883 (7th Cir. 1982). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court adopted a "plausibility" requirement which obliges a pleader to amplify a claim with factual allegations sufficient to render the claim plausible. 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As the Seventh Circuit stated in *Cooney v. Rossiter*, 583 F.3d 967 (7th Cir. 2009), "'determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 971 (quoting *Iqbal*, 556 U.S. at 663-64).

### A. The Court May Consider The Content Of The Film And The Websites Referred To In The Complaint In Deciding This Motion To Dismiss.

When ruling on a motion to dismiss, the Court need not rely solely on the allegations within the four corners of the complaint. Under the incorporation-by-reference doctrine, a court may take judicial notice of "documents that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to [its] claim." *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002) (internal citation omitted). This rule permits a defendant to "submit the document[s] to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *accord Eastland Music Group, LLC v. Lionsgate Entm't, Inc.*, 2012 WL 2953188, at *2 (N.D. Ill. July 19, 2012) (taking judicial notice

of defendant's motion picture on Rule 12 motion to dismiss).  *See generally* RJN at 1-3.

Accordingly, this Court may properly consider the content of the Film and the related websites

referenced in Plaintiff's Complaint in deciding this motion to dismiss.

> **B.      The Court May Determine At The Pleading Stage That Warner Bros.'
> Film And The Websites Are Protected By The First Amendment
> And Not Actionable As A Matter Of Law**.

Courts in this Circuit have long held that motions to dismiss are properly granted on the

basis of affirmative defenses when all necessary information is before the court.  *See*, *e.g.*,

*Ginsburg v. Black*, 192 F.2d 823, 825-26 (7th Cir. 1951) (privilege); *Firth v. Yahoo! Inc.*, 2010

WL 4955548, at *1 (N.D. Ind. Nov. 30, 2010) (statute of limitations); *Gates v. Towery*, 456 F.

Supp. 2d 953, 966 (N.D. Ill. 2006) (res judicata).  The Seventh Circuit recently upheld the

dismissal of a copyright claim on fair use grounds, holding that "when all relevant facts are

presented, the court may properly dismiss a case before discovery" pursuant to an affirmative

defense.  *See Brownmark Films*, 682 F.3d at 690; *see also Eastland Music*, 2012 WL 2953188, at

*2 (First Amendment defense to trademark claims); *Woodard v. Jackson*, 2004 WL 771244, at

*7 (S.D. Ind. Mar. 25, 2004) (same).[4]

Courts outside this Circuit also have routinely dismissed intellectual property claims

involving expressive works at the pleading stage, where (as here) all of the materials necessary to

---

[4] In *Brownmark*, the plaintiff alleged copyright infringement based on an episode of *South Park*
that parodied plaintiff's YouTube video.  *Id.* at 689.  Although the complaint referenced both the
original YouTube video and the *South Park* episode at issue, it did not attach either work.  *Id.*
Defendant filed a motion to dismiss, attaching both videos as exhibits under the incorporation-
by-reference doctrine.  *Id.*  After considering the submitted videos, the district court granted the
motion to dismiss based on the defendants' fair use defense.  *Id.* at 690.  The Seventh Circuit
held that "the district court was correct to rely solely on the two expressive works referenced in
Brownmark's amended complaint and attached to [defendants'] motion, as well as the
allegations in the complaint, to decide the fair use defense."  *Id.*; *see also id.* at 691 ("[d]istrict
courts need not, and indeed ought not, allow discovery when it is clear that the case turns on
facts already in evidence").

make the decision are before the court.  *See Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 612-13 (6th Cir. 2009) (trademark fair use defense); *Kelly-Brown v. Winfrey*, 2012 WL 701262, at *6 (S.D.N.Y. Mar. 6, 2012) (same); *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 634-36 (S.D.N.Y. 2008) (Lanham Act claims); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 972-73 (C.D. Cal. 2007) (same).  Earlier this year, in *Louis Vuitton Mallatier S.A. v. Warner Brothers Entertainment Inc.*, --- F. Supp. 2d ---, 2012 WL 2248593 (S.D.N.Y. June 15, 2012), the court applied the *Rogers* test to dismiss trademark claims asserted against Warner Bros. based on the appearance of what was alleged to be an imitation Louis Vuitton travel bag as a prop in the motion picture *The Hangover II*.  *See id.* at *3-8.

As numerous courts have recognized, where copyright and trademark claims are based on the alleged infringing use of the plaintiff's intellectual property in the defendant's expressive work, addressing these issues on a motion to dismiss is particularly important to avoid costly, protracted litigation that would chill constitutionally protected expression.  *E.g.*, *Reichenberger v. Pritchard*, 660 F.2d 280, 289 (7th Cir. 1981).  *See generally Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965) ("[t]he chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure").

IV.   **WARNER BROS.' USE OF THE PHRASE "CLEAN SLATE" IN A FICTIONAL CREATIVE WORK IS FULLY PROTECTED BY THE FIRST AMENDMENT**

As a motion picture, *The Dark Knight Rises* constitutes expressive speech fully protected by the First Amendment.  *See Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 65-66 (1981); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501-02 (1952); *Winters v. New York*, 333 U.S. 507, 510 (1948); *see also Eberhardt v. O'Malley*, 17 F.3d 1023, 1026 (7th Cir. 1994) ("[t]he First Amendment protects entertainment as well as treatises on politics and public administration").

9

In order for Plaintiff to overcome this First Amendment protection and challenge the Film under the Lanham Act, it must satisfy the high threshold set forth in *Rogers v. Grimaldi* and the cases across the country that have adopted its analysis.  *Rogers* involved a motion picture entitled *Ginger and Fred* about a fictional Italian couple who attempted to style their dancing career after that of Fred Astaire and Ginger Rogers.  875 F.2d at 996-97.  Ginger Rogers sued under Section 43(a) of the Lanham Act for false designation of origin, alleging the title of the film suggested that she sponsored, endorsed or was otherwise involved with the film.  *Id.* at 997.

Recognizing that extending the Lanham Act to works of art would stifle "the public's interest in free expression," *Rogers* held that, where the use of the mark at issue (1) has "at least some artistic relevance to the work" and (2) "is not explicitly misleading," the Lanham Act is "inapplicable." *Id.* at 1000.  In order for a representation to be *explicitly* misleading, it must contain an "explicit misstatement," "overt claim," or "explicit indication" as to the plaintiff's endorsement or sponsorship of the film, beyond the mere appearance or use of the plaintiff's trademark. *Id.* at 1001.

The Sixth, Ninth and Eleventh Circuits all have adopted the *Rogers* framework, with the Eleventh Circuit most recently embracing Rogers as "the landmark case for balancing trademark and First Amendment rights."  *See University of Alabama Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1277 (11th Cir. 2012); *E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099-1101 (9th Cir. 2008); *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 926-28 (6th Cir. 2003); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 901-02 (9th Cir. 2002).  No Circuit has rejected *Rogers*' framework.

The *Rogers* test applies to Lanham Act claims based on the alleged use of protected marks in both the title and in the body of expressive works.  *See E.S.S. Entm't*, 547 F.3d at 1100;

*ETW Corp.*, 332 F.3d at 927; *see also Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Group, Inc.*, 886 F.2d 490, 495 (2d Cir. 1989) ("we hold that the *Rogers* balancing approach is generally applicable to Lanham Act claims against works of artistic expression …").[5]

As federal appellate courts have elaborated in the wake of *Rogers*, Lanham Act claims must be construed "narrowly" in "any case where an expressive work is alleged to infringe a trademark." *Cliffs Notes*, 886 F.2d at 494-95; *accord Univ. of Alabama*, 683 F.3d at 1277.  The rationale for this narrow construction of the Lanham Act is plain: the First Amendment interest in promoting the free and open exchange of ideas would be undermined if trademark owners could challenge expressive works based merely on their inclusion of words or phrases protected by trademark law.  *See Rogers*, 875 at 998-99.[6]

With respect to Plaintiff's state law claims, "[t]he analysis under the Lanham Act for trademark infringement and unfair competition also applies to claims of unfair competition under Indiana common law." *CFM Majestic, Inc. v. NHC, Inc.*, 93 F. Supp. 2d 942, 950 n.20 (N.D. Ind. 2000); *see also Woodard v. Jackson*, 2004 WL 771244, at *9 ("[a] court should analyze an Indiana common law action for unfair competition in the same manner as a Lanham Act claim"). Where, as here, state law is congruent with the Lanham Act, courts consistently have held that the *Rogers* test applies with equal force:  that is, to the extent the First Amendment limits application of the Lanham Act, it also bars state law unfair competition claims.  *See Dillinger*, 2011 WL 2457678, at *1, *4 (applying *Rogers* to dismiss plaintiff's Lanham Act and Indiana

---

[5] Although the Seventh Circuit has not explicitly adopted the *Rogers* test, at least three district courts within the Circuit recently have applied *Rogers* in the context of expressive works.  *See Eastland Music Group*, 2012 WL 2953188, at *3; *Dillinger, LLC v. Electronic Arts Inc.*, 2011 WL 2457678, at *4 (S.D. Ind. June 16, 2011); *Woodard v. Jackson*, 2004 WL 771244, at *7.  No courts in this District have rejected the *Rogers* analysis.

[6] It is well established that the *Rogers* analysis applies to trademark infringement claims asserted under both Section 32 and Section 43(a) of the Lanham Act.  *See, e.g., Mattel v. MCA Records*, 296 F.3d at 902.

common law claim for unfair competition pursuant to a First Amendment defense); *see also E.S.S. Entm't*, 547 F.3d at 1098-1101; *ETW Corp.*, 332 F.3d at 920; *The Romantics v. Activision Publ'g, Inc.*, 574 F. Supp. 2d 758, 765-66 (E.D. Mich. 2008).

      The case for First Amendment protection is much stronger here than in *Rogers*, where the mark at issue was used as the title of a motion picture.  As the court in *Rogers* recognized, the title of a film is a "significant means of marketing the film to the public."  *Rogers*, 875 F.2d at 998.  Thus, the use comes far closer to a representation as to the origin or endorsement of the film than an incidental use within the body of the work.  Nonetheless, the Court held that any risk of confusion in that case was outweighed by the First Amendment.  *Id.* at 999-1002.  In contrast, the phrase "clean slate" is used only a few times during *The Dark Knight Rises* film to describe a fictional product that plays a role in advancing the Film's plot, thereby making any claim of confusion far more tenuous than in *Rogers*.  *See E.S.S. Entm't*, 547 F.3d at 1100-01 (rejecting Lanham Act claims based on the appearance of an unauthorized and fictionalized replica of the plaintiff's nightclub within the content of the defendant's videogame).

### A.      Warner Bros.' Use Of The Phrase "Clean Slate" Has Obvious Artistic Relevance To The Film.

      The first prong of the *Rogers* test merely requires that the defendant's use of the plaintiff's name or trademark have at least "some relevance to the underlying work," *i.e.* the defendant's work.  *E.S.S. Entm't*, 547 F.3d at 1100; *Rogers*, 875 F.2d at 999.  In other words, the defendant must not have "arbitrarily chosen" to use the plaintiff's trademark "just to exploit the publicity value," but rather the use of the mark must have at least some "genuine relevance" to the defendant's expressive work.  *Rogers*, 875 F.2d at 1001.

      This does not require, however, that the defendant's work be "about" the trademark or what the trademark signifies.  As *Rogers* and its progeny make clear, the threshold for assessing

12

artistic relevance is extremely low: all that is required is that the challenged use have more than "zero" relevance to the defendant's work. *See Rogers*, 875 F.2d at 999 (holding that the threshold is "no artistic relevance to the underlying work *whatsoever*") (emphasis added); *E.S.S. Entm't*, 547 F.3d at 1100 (under *Rogers* "the level of relevance merely must be above zero"); *Roxbury Entertainment v. Penthouse Media Group, Inc.*, 669 F. Supp. 2d 1170, 1175-76 (C.D. Cal. 2009) (same); *see also Dillinger*, 2011 WL 2457678, at *6 ("any connection whatsoever is enough").

Here, the allegations in Plaintiff's Complaint *by themselves* satisfy this test, as they make clear that Warner Bros.' use of the phrase "clean slate" to describe the fictional software program depicted in the Film was "[p]art of the plot of *The Dark Knight Rises*" (Complaint ¶ 19) and relates to the interaction between the characters Batman and Selina Kyle (*id.*). A review of the DVD of the Film confirms that the challenged two-word phrase factors in the plot of the Film. *See*, *supra*, Section II and RJN, Ex. A. That is all that is required for Warner Bros. to prevail under the first prong of the *Rogers* test.[7]

_____

[7] Under *Rogers* and the decisions that follow it, it is also clear that the First Amendment protects the defendant's use of the plaintiff's mark in an expressive work *regardless* of whether the defendant intended to refer or allude to the plaintiff or its products. In *Webceleb, Inc. v. Procter & Gamble Co.*, No. 10-CV-2318, --- WL --- (S.D. Cal. Sept. 25, 2012), the court applied the *Rogers* test to a Lanham Act claim based on the defendants' use of the term "Web Celeb" in advertising and promoting the "People's Choice Awards" television broadcast, without regard to whether the plaintiff even knew about the plaintiff's mark. *See* RJN, Ex. D (slip op. at 1-2, 5-8); *see also Eastland Music*, 2012 WL 2953188 at *3 (applying *Rogers* to dismiss Lanham Act claim based on the defendant's film title *50/50*, where the title referred to a character's chances of cancer survival and not to the plaintiff's musical group "Phifty-50"); *Roxbury Entm't*, 669 F. Supp. 2d at 1176 (under *Rogers*, First Amendment protected defendants' use of the term "Route 66" in the title of its pornographic movie because the term evoked mental imagery – *e.g.*, "road trips" and "cross-country travel" – that had at least some "tenuous" relationship with the content of the defendants' film, not because it referred to the plaintiff's 1960s television series).

**B.     Warner Bros.' Use Of The Phrase "Clean Slate" Is Not Explicitly Misleading.**

Given the artistic relevance of the challenged use of its mark, Plaintiff's trademark and unfair competition claims are barred absent a showing that the Film "explicitly misleads as to the source or the content of the [defendant's] work" – that is, the defendant's film, book, or other expressive creation.  *See Rogers*, 875 F.2d at 999; *E.S.S. Entm't*, 547 F.3d at 1099.  As the Ninth Circuit explained, "[t]his prong of the test points directly at the purpose of trademark law, namely, to 'avoid confusion in the marketplace by allowing a trademark owner to prevent others from duping consumers into buying a product they mistakenly believe is sponsored by the trademark owner.'"  *E.S.S.*, 547 F.3d at 1100 (citing *Mattel, Inc. v. Walking Mt. Prods.,* 353 F.3d 792, 806 (9th Cir. 2003)).

Thus, the relevant question is whether the defendant's use of the mark will explicitly mislead the public into thinking the plaintiff was "somehow behind the [defendant's expressive work] or that it sponsors [the defendant's expressive work].  *E.S.S. Entm't*, 547 F.3d at 1100.  In other words, the use of the phrase "clean slate" in Warner Bros.' Film must be explicitly misleading as to the source or sponsorship of the Film itself – it must overtly indicate that the Film is sponsored by or associated with Fortres Grand.  Plaintiff does not and cannot make such an allegation here, and therefore cannot satisfy the second prong of the *Rogers* test.  Nowhere in the Complaint does Plaintiff allege that there is anything explicitly misleading about the use of the phrase "clean slate" in the motion picture *The Dark Knight Rises*.  Indeed, the Complaint makes clear that Plaintiff's claims are premised solely on the fact that the phrase was used within the Film in connection with the fictional software program that Batman eventually gives to Selina Kyle.  *See* Complaint ¶¶ 19-20, 22-24.

14

As a matter of law, the mere use in the Film of a common, descriptive phrase that also happens to be Plaintiff's mark is not remotely sufficient to satisfy the second prong of the *Rogers* test.  *See Rogers*, 875 F.3d at 999-1000 (explaining that the mere appearance of celebrity's name in a title would not "explicitly mislead" as to endorsement or sponsorship); *E.S.S. Entm't*, 547 F.3d at 1100 ("the mere use of a trademark alone cannot suffice to make such use explicitly misleading"); *Mattel v. MCA Records*, 296 F.3d at 902 (same); *see also Dillinger*, 2011 WL 2457678, at *6 (to be "explicitly misleading," the Film must make an "affirmative statement of the plaintiff's sponsorship or endorsement, beyond the mere use of plaintiff's name or other characteristic"); *Woodard v. Jackson*, 2004 WL 771244, at *7-8 (dismissing Lanham Act claim by former members of a music group called "Ripples and Waves" against a record company based solely on the use of "Ripples and Waves" as the title of a Jackson 5 compilation album).[8] Any other result "would render *Rogers* a nullity."  *E.S.S. Entm't*, 547 F.3d at 1099.

Consequently, the Film is fully protected by the First Amendment from Plaintiff's claims.

---

[8] In a recent case involving similar facts, the court dismissed a Lanham Act claim brought against Disney based on its use of the plaintiff's STEWART SURFBOARDS trademark on the back cover of a book about a Disney character's surfing vacation.  In dismissing the plaintiff's claim on the pleadings, the court concluded that the plaintiff had failed to overcome *Rogers* because:

> The *Hannah Montana* book contains no such explicit misstatement that it is sponsored by or about Stewart Surfboards.  It does not say anything like "Brought To You By Stewart Surfboards" or "Presented By Stewart Surfboards," nor does it indicate that it is a story about Stewart or his surfboards.  To the contrary, the book jacket and spine include the Disney logo, the "Disney Press" Logo, and the Disney channel logo, and the back and inside flaps of the jacket describe the book as a story about a girl's summer vacation."

*Stewart Surfboards, Inc. v. Disney Book Group LLC*, 2011 U.S. Dist. LEXIS 155444, at *25-26 (C.D. Cal. May 11, 2011).

## V.    THE *DARK KNIGHT RISES* WEBSITES ARE SIMILARLY PROTECTED BY THE FIRST AMENDMENT

To the extent Plaintiff's trademark and unfair competition claims are based on the two websites for *The Dark Knight Rises* identified in the Complaint (¶¶ 22-23), they also must be dismissed on First Amendment grounds.  It is well established that, where advertisements for an expressive work refer to or depict the content of the work, the advertisements themselves are protected under the First Amendment from trademark, right of publicity, and other content-based claims to the same extent as the underlying expressive work.  *See*, *e.g.*, *ETW Corp.*, 332 F.3d at 920, 924; *Ruffin-Steinback v. Depasse*, 267 F.3d 457, 459, 461-62 (6th Cir. 2001); *Groden v. Random House, Inc.*, 61 F.3d 1045, 1049 (2d Cir. 1995) (collecting cases); *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002).

In *ETW Corp.*, for example, the Sixth Circuit held that the use of the registered trademark TIGER WOODS in marketing materials relating to a painting of Tiger Woods at The Masters golf tournament were protected by the trademark fair use doctrine and the First Amendment.  *See* 332 F.3d at 920.  Similarly, in *Ruffin-Steinback*, the court considered whether the defendant's depiction of the plaintiffs (members of the singing group The Temptations) in an advertisement for a miniseries about the group called *The Temptations* constituted commercial misappropriation.  267 F.3d at 462.  In upholding the district court's dismissal of the misappropriation claim, the Sixth Circuit found that "the use of plaintiffs' fictionalized likenesses in a work protected by the First Amendment and the advertising incidental to such uses did not give rise to a claim for relief."  *Id*.  *See also Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 639 (9th Cir. 1982) ("[c]onstitutional protection extends to the truthful use of a public figure's

16

name and likeness in advertising which is merely an adjunct of the protected publication and promotes only the protected publication").

Here, the *Dark Knight Rises* websites that Plaintiff references in the Complaint recreated the fictional Gotham City milieu, portraying and elaborating on the same settings, themes and characters depicted in the Film. As described above, the websites used the descriptive phrase "clean slate" to refer to the same imaginary software program depicted in the Film. Because the Film's references to "clean slate" are protected under the First Amendment, similar references in these online promotions for the Film also are protected.

Courts have applied this rule in a variety of other areas involving the promotion of expressive works protected by the First Amendment. In the right of publicity context, for example, courts have consistently found that film advertising is protected when the underlying expressive work is protected by the First Amendment and the advertising is incidental to the distribution of the work. *See, e.g., Daly v. Viacom*, 238 F. Supp. 2d at 1123 ("As [the television show] *Bands on the Run* is an expressive work protected by the First Amendment, plaintiff cannot state a misappropriation claim based on the use of her likeness in the program or the advertisements for the program."); *Page v. Something Weird Video*, 960 F. Supp. 1438, 1444 (C.D. Cal. 1996) (holding that advertisements for two motion pictures were constitutionally protected "because the videos themselves are protected by the First Amendment, and the advertising is incidental to the protected publication of the videos").

Recently, in *Esch v. Universal Pictures Co.*, 97 U.S.P.Q.2d 1237 (N.D. Ala. Nov. 2, 2010), the court dismissed a right of publicity claim against Universal for using the plaintiff's likeness in a trailer to promote its motion picture *Despicable Me*, stating that "although the trailer is a commercial tool as suggested by the plaintiff, it is protected under the First Amendment as it

is a part of a protected expressive work."  *Id.* at 1243.  Similarly, in *Whitehurst v. Showtime Networks, Inc.*, 2009 WL 3052663 (E.D. Tex. Sept. 22, 2009), the court dismissed a right of publicity claim against Showtime for using the likeness of plaintiff's alleged predecessor-in-interest in advertising for its film *Jasper, Texas*, stating that since "the film itself is protected and not subject to suit, it follows that the promotion of the film is protected."  *Id.* at *8.  *See also Thoroughbred Legends, LLC v. Walt Disney Co.*, 2008 WL 616253, at *12 (N.D. Ga. Feb. 12, 2008) (finding that "the use of Plaintiffs' likenesses in advertising the film is protected because the film itself is protected"); *Nichols v. Moore*, 334 F. Supp. 2d 944, 957 (E.D. Mich. 2004) (holding that if a video documentary contains a protected use of a person's likeness, "there is little question that an advertisement for the documentary containing a clip of that use would be permissible").[9]

Here, because Warner Bros.' use of the phrase "clean slate" in *The Dark Knight Rises* is protected by the First Amendment under *Rogers* and its progeny, the use of the phrase in any websites promoting the Film, as alleged in the Complaint, likewise is protected from liability.

## VI.   WARNER BROS.' USE OF THE PHRASE "CLEAN SLATE" IS NOT ACTIONABLE UNDER TRADEMARK OR UNFAIR COMPETITION LAW

### A.   Plaintiff's Claims Do Not Allege Actionable Confusion Involving Consumer Purchasing Decisions.

Trademark registrations do not grant rights in a vacuum, nor do they confer monopolies over all uses of a word or phrase in all contexts.  *See, e.g., Mattel v. MCA Records*, 296 F.3d at

---

[9] Courts also have applied this rule to defamation actions.  *See National Life Ins. Co. v. Phillips Publ'g, Inc.*, 793 F. Supp. 627, 644-45 (D. Md. 1992) (holding that if advertisements that simply reprinted text from a protected newsletter could support an action for defamation, the result would be "that commentators on national issues could enjoy … uninhibited, robust debate … only so long as their statements did not happen to be reprinted in advertisements for their books, articles and television programs"); *see also Lane v. Random House*, 985 F. Supp. 141, 152 (D.D.C. 1995) (in granting judgment to defendant in a libel claim, finding that "the critical question is whether the promotional material relates to a speech product that is itself protected").

900 ("[t]rademark rights do not entitle the owner to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view") (quoting *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 29 (1st Cir. 1987)).  Rather, trademark rights are defined and limited by reference to the goods and services with which the mark is used in commerce. *See Anti-Monopoly, Inc. v. General Mills Fun Group*, 611 F.2d 296, 301 (9th Cir. 1979) ("[i]t is the source-denoting function which trademark laws protect, and nothing more").  *See generally Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) ("[a] trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his") (Holmes, J.).

Accordingly, the Lanham Act addresses consumer confusion as to the affiliation, origin, sponsorship, or approval of the defendant or its products.  *See* 15 U.S.C. § 1114(1) (providing claims arising from the unauthorized use in commerce *by the defendant* of a registered mark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services ….") and 15 U.S.C. § 1125(a)(1)(A) (providing claim arising from confusion as to the defendant's association with another person or as to the "origin, sponsorship or approval of [the defendants'] *goods, services or commercial activities*").  Thus, under the statute, there must be some plausible nexus between allegations of confusion and the defendant and its actual goods or services offered for sale to consumers.

Courts have long held that trademark laws "protect[] only against mistaken purchasing decisions and not against confusion generally."  *Lang v. Retirement Living Publ'g Co.*, 949 F.2d 576, 582-83 (2d Cir. 1991).  *See generally Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003) (actionable confusion under the Lanham Act must be related to "the

19

tangible goods that are offered for sale" and not confusion as to the source of "any idea, concept, or communication embodied in those goods").

Here, however, Plaintiff's only allegation of consumer confusion consists of an assertion that unidentified individuals "blogging" and "tweeting" on the Internet have "questioned" whether the imaginary "clean slate" program depicted in the Film "is real and could potentially work." *See* Complaint ¶ 24. As a matter of basic trademark law, such claims of "confusion in the air" unrelated to the actual goods offered to consumers by Warner Bros. are not actionable.

The only purchasing decision made by a consumer of *The Dark Knight Rises* is whether to buy a movie theater ticket or purchase a DVD or Blu-ray of the Film. There is no allegation that the Film's descriptive use of the phrase "clean slate" – or the fact that the phrase also happens to be Plaintiff's trademark – has any impact on any purchasing decision relating to Warner Bros.' product, which is the Film. Plaintiff is not in the movie business, and it is absurd to think that customers buy tickets to *The Dark Knight Rises* or purchase the DVD/Blu-ray because of a perceived association of the Film with Fortres Grand's products. Conversely, Warner Bros. is not in the business of selling computer security programs, and it is absurd to think that anyone contemplating a purchase of Plaintiff's "Clean Slate" product would believe it originated from or was sponsored by the Warner Bros. movie studio. Plaintiff's inability to plead any plausible "confusion" linked to the Film itself is fatal to its claims.

Numerous courts have reached the same conclusion – both in situations where the defendant depicted in its expressive work a fictional product or company that happened to have the same name as the plaintiff or its products, and in situations where the defendant used a real trademarked item as a prop in its expressive work.

When a defendant's expressive work includes a fictional product or company name that is alleged to infringe a real-world trademark, courts focus on whether the plaintiff has alleged any confusion relating to purchases of the parties' *actual* goods or services.  Where, as here, the plaintiff has used its trademark on products that are obviously distinct from the relevant product offered by the defendant – *i.e.*, the motion picture or television program at issue – courts have had little hesitation in rejecting the claims.

In *Ocean Bio-Chem, Inc. v. Turner Network Television, Inc.,* 741 F. Supp. 1546 (S.D. Fla. 1990), for example, the court considered a claim for trademark infringement brought by the manufacturer of "Star Brite" cleaners and polishes against Turner for depicting a fictional "Star Brite Batteries" company in its movie *Incident at Dark River*.  *Id.* at 1551, 1557.  Rather than evaluating whether there was a likelihood of confusion between the "Star Brite" cleaners and polishes and the fictitious "Star Brite Batteries" company, the court held that it "must compare the parties' *ultimate* products:  those that Ocean markets under the Star Brite name *and the movie itself*."  *Id*. at 1557 (emphasis added).  Observing that "Ocean's [cleaning products] and defendant's [motion picture] products are not even remotely similar," the court had no trouble ruling for Turner.  *Id*.[10]

Even where the plaintiff's product occupies the same general field as the fictitious product depicted in the defendant's expressive work, courts have held that the defendant's

---

[10] Similarly, in *Zeocrystal Industries, Inc. v. Fox Broadcasting Co.*, 923 F. Supp. 132 (N.D. Ill 1996), plaintiff sued Fox for infringing its trademark "Zeocrystal," a mark that it used in connection with its odor-removing products.  *Id.* at 133-34.  Specifically, plaintiff challenged Fox's reference to a "fantasy magical weapon" that powered up using "ZEO Crystals" in its children's television show *Power Rangers*.  *Id*. at 134.  *Sua sponte*, the court deemed plaintiff's allegations to be "extremely doubtful candidate[s] for survival" and ordered plaintiff to either amend or drop his complaint, noting the absurdity of a claim that anyone could be confused that plaintiff was the source of the defendant's *Power Rangers* television programs and merchandise. *See id*.

references to the fictional product cannot support a claim for trademark infringement.  In *Davis v. Walt Disney Co*., 393 F. Supp. 2d 839 (D. Minn. 2005), the court found no likelihood of confusion between plaintiff's environmental organization "Earth Protector Licensing Corp." and Disney's fictional use of the term "Earth Protectors" as the name of a corporation that manufactured environmental software put to nefarious uses in its film *Up, Up and Away*.  *See id.* at 841, 843.  Although both uses of the mark concerned the environment, the court found that "no competitive proximity exists because Defendants' *children's television movies* do not compete with [plaintiff's] environmental pamphlets, t-shirts, or the sporadic use of the term 'Earth Protectors' on public access cable television."  *Id*. at 845 (emphasis added).

Conversely, courts uniformly have concluded that even the passing appearance of a real trademarked product, identified by name, in a motion picture is not an infringing trademark use.  In *Caterpillar, Inc. v. Walt Disney Co.*, 287 F. Supp. 2d 913 (C.D. Ill. 2003), for instance, the court refused to grant an injunction under Section 43(a) of the Lanham Act based on the appearance of Caterpillar bulldozers bearing Caterpillar trademarks over the course of about eight minutes in the motion picture *George of the Jungle II*.  *Id*. at 920.  The court recognized that "the appearance of products bearing well known trademarks in cinema and television is a common phenomenon" and pointed out that the "mere appearance" of a Ford Taurus in a car chase scene would not, by itself, support an infringement claim.  *Id.* at 919-20.[11]

---

[11] Similarly, in *Wham-O, Inc. v. Paramount Pictures Corp.*, 286 F. Supp. 2d 1254 (N.D. Cal. 2003), the court rejected a trademark infringement claim based on the appearance of a "Slip `N Slide" toy in one scene in the movie *Dickie Roberts*, even though the product was identified by name in the film, because there could be no consumer confusion as to source or endorsement of film.  *Id.* at 1262.  As the court explained: "Consumers and viewers will not mistake plaintiff for a movie production house, and consumers and viewers will not mistake defendants for a purveyor of toys."  *Id.*

Here, because Plaintiff cannot allege the requisite actionable confusion in purchasing decisions relating to the parties' actual products – *i.e.*, Plaintiff's computer security program and Warner Bros.' major motion picture – its trademark claims fail as a matter of law.

**B.      Warner Bros.' Use Of The Phrase "Clean Slate" Is A Classic Fair Use.**

Plaintiff's Lanham Act claims also must be dismissed because Warner Bros.' use of the phrase "clean slate" in the Film, as well as the use of the phrase on the websites referenced in the Complaint, is a quintessential fair use under trademark law.

Under the Lanham Act, fair use "is a use, otherwise than as a mark …which is descriptive of and used fairly and in good faith to describe the goods or services of each party …." 15 U.S.C. § 1115(b)(4).  To prevail on a fair use affirmative defense, defendants must show that "(1) they used [the challenged phrase] in a non-trademark use; (2) the phrase is descriptive of their goods or services; and (3) they used the phrase 'fairly and in good faith' only to describe their goods or services."  *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 639 (7th Cir. 2001) (citation omitted); *accord Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055, 1059 (7th Cir. 1995) (holding that Ocean Spray's use of "sweet-tart" in connection with juice products was descriptive and therefore did not infringe candy company's "SweeTarts" trademark).[12]

Fair use may be determined solely through review of the defendant's use of the plaintiff's mark.  *See KP Permanent Make-Up v. Lasting Impression I, Inc.*, 543 U.S. 111, 124 (2004).  The

---

[12] While the Lanham Act provides a statutory fair use defense in 15 U.S.C. § 1115(b)(4) for registered marks, the fair use defense also applies to claims under Section 43(a) of the Act, 15 U.S.C. § 1125(a).  *See, e.g.*, *Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 268 (2d Cir. 1995); *see also Ciociola v. Harley-Davidson, Inc.*, 552 F. Supp. 2d 845, 859 (E.D. Wis. 2008).  The defense also applies to state law unfair competition claims based on the same facts. *See Vision Center Northwest, Inc. v. Vision Value, LLC*, 673 F. Supp. 2d 679, 683 (N.D. Ind. 2009); *CFM Majestic*, 93 F. Supp. 2d at 950 n.20 ("[t]he analysis under the Lanham Act for trademark infringement and unfair competition also applies to claims of unfair competition under Indiana common law").

23

fair use defense requires that Warner Bros.' use of the phrase "clean slate" was "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 64 (2d Cir. 2000).

A "non-trademark" use of a phrase is evident where "the source of the defendants' product is clearly identified by the prominent display of the defendants' own trademarks," rather than by the phrase in question. *Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30-31 (2d Cir. 1997); *accord Kelly-Brown v. Winfrey*, 2012 WL 701262, at *3-5 (dismissing Lanham Act claims on a motion to dismiss because the use of plaintiff's trademarked phrase "Own Your Power" on the cover of a magazine was not a trademark use where the source of the defendant's product (the magazine) was clearly identified on the cover); *see also Ciociola*, 552 F. Supp. 2d at 858; *Note Family, Inc. v. Vivendi Universal Games, Inc.*, 2007 WL 2565970, at *5 (S.D. Ill. Sept. 4, 2007). Here, Warner Bros.' use of the phrase "clean slate" is plainly non-trademark: the words are used in a descriptive sense to explain how the fictional software program works, and Warner Bros.' own trademarks are prominently displayed at the beginning and end of the Film and on the DVD/Blu-ray packaging. *See*, *supra*, Section II and RJN, Ex. A.

For a word or phrase to be considered descriptive (in the context of fair use), "it merely needs to refer to a characteristic of the [defendant's] product." *Sunmark*, 64 F.3d at 1059. In concluding that Ocean Spray's use of "sweet-tart" was descriptive, the Seventh Circuit in *Sunmark* noted that the phrase was intended to advertise "a drink that has elements of both sweetness (it is sugared) and tartness (it is based on cranberries). *Id.* The court noted further that "sweet-tart" was "adjectival," and that it contained "words of description in ordinary English" *Id.* at 1058-59. Like the phrase "sweet-tart," the term "clean slate" is an English phrase

24

commonly used in a descriptive manner.  As explained in the Oxford English Dictionary, the phrase "to wipe the slate clean" means "to obliterate or cancel a record" or "to make a fresh start."  Just as Ocean Spray used "sweet-tart" to describe its sweet and tart cranberry juice, Warner Bros. used the phrase "clean slate" to describe the characteristics of a product depicted in the Film and in websites that referenced and promoted the Film.

Finally, to determine whether a mark is used in good faith, courts look to whether the plaintiff has plausibly alleged that the defendant "attempted to cash in on any goodwill generated by Plaintiff in its use of the phrase."  *Note Family*, 2007 WL 2565970, at *5.  Here, Plaintiff does not and cannot allege any facts suggesting that Warner Bros. used the phrase "clean slate" in the Film or the promotional websites to capitalize on Plaintiff's goodwill, or otherwise acted in bad faith in using the phrase.  For these reasons, Plaintiff's claims are barred by the fair use doctrine.

## VII.   CONCLUSION

For all of the foregoing reasons, Warner Bros. respectfully requests that the Court grant its motion to dismiss without leave to amend.

Dated:  December 10, 2012                    Respectfully submitted,

                                             JENNER & BLOCK LLP


                                             By   /s/ Andrew J. Thomas

                                             Attorneys for Defendant
                                             WARNER BROS. ENTERTAINMENT INC.

25

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of December, 2012, a copy of the foregoing

Defendant Warner Bros. Entertainment Inc.'s Memorandum in Support of Motion to Dismiss

was filed electronically and served on counsel for all parties via a Notice of Electronic Filing

through the CM/ECF system.

/s/  Keith V. Porapaiboon