IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| FORTRES GRAND CORPORATION, )<br>an Indiana corporation, )<br>  )<br>　　Plaintiff, )<br>  )<br>v. )<br>  )<br>WARNER BROS. ENTERTAINMENT )<br>INC., a Delaware corporation, )<br>  )<br>　　Defendant. ) | CIVIL ACTION NO. 3:12-CV-00535-PPS-CAN<br><br>CHIEF JUDGE PHILIP P. SIMON |

**RESPONSE TO MOTION TO DISMISS**

**I.     Introduction**

This is a worst-case scenario of reverse confusion, a type of trademark infringement where a powerful junior user of a mark overwhelms the goodwill and recognition of the senior user's mark.  Having irretrievably damaged the goodwill and thus the profitability of Fortres Grand's CLEAN SLATE Mark, Warner Bros. now tries to stretch the First Amendment and the fair use doctrine to avoid responsibility for the harm it has caused.  But these defenses do not apply here.

Since 2000, Fortres Grand Corporation ("Fortres Grand") has marketed security software under the mark CLEAN SLATE ("CLEAN SLATE Mark" or "CLEAN SLATE Software").  Because securing sensitive information is at the heart of the CLEAN SLATE Software, and because of the abundance of "malware" (malicious computer software disguised as security software), the stellar reputation of Fortres Grand's CLEAN SLATE Mark is crucial to the sales of CLEAN SLATE Software.

That reputation was damaged by Warner Bros. Entertainment, Inc.'s ("Warner Bros.") film *The Dark Knight Rises* (the "Film") and accompanying publicity, which features a nefarious

computer program bearing the trademark "Clean Slate." The Film's "Clean Slate" software illegally erases a person's criminal record—the opposite purpose of the CLEAN SLATE Software's protection of sensitive data. Warner Bros. featured "Clean Slate" software not only in the movie, but also in Warner Bros.' online marketing efforts and commercial tie-ins. It became ubiquitous on the Internet. Following the Film's release, searches for "clean slate" return hundreds of references to Warner Bros. "Clean Slate" program, squeezing out references to the Fortres Grand CEAN SLATE Software. Moreover, since the release of the Film in July 2012, Fortres Grand's revenue from the sale of CLEAN SLATE Software dropped by half.

**II.     Statement of Facts**

Fortres Grand's CLEAN SLATE Software is a computer security program that restores computers to their original configurations. Verified Complaint (hereinafter "Compl.") ¶ 7. When a user logs off or reboots a computer, the CLEAN SLATE Software restores erased files and discards installed software, downloaded spyware or adware, viruses, Trojan horses and altered icons. Fortres Grand owns an incontestable registered trademark for CLEAN SLATE for "computer software used to protect public access computers by scouring the computer drive back to its original configuration upon reboot," Reg. No. 2,514,853. Compl. ¶ 12.

CLEAN SLATE Software is sold over the Internet, and its good reputation among Internet users is central to its success. Compl. ¶¶ 8, 13-15. Many so-called "security software" products available for download over the Internet are actually designed to trick users into compromising a computer system's security, potentially damaging computer systems, taking control over computer operations, and importing spyware, adware, and viruses. Compl. ¶ 14. Therefore, consumers are understandably, and rightly, wary when choosing security software products. Compl. ¶¶ 13-15.

Warner Bros. is a large entertainment company producing, among other things, film, television, and software.  Compl. ¶ 16.  In July 2012, Warner Bros. released the Film, the latest in its Batman franchise.  Compl. ¶¶ 17-18.  It was wildly successful.  Compl.¶ 18.

In the Film, Batman promises Selina Kyle that he will procure for her a software program bearing the trademark "Clean Slate" that would erase her criminal history from every computer database in the world.  Compl. ¶¶ 19-20.  In other words, Warner Bros.' "Clean Slate" is a tool for criminals to wreak havoc with computer systems.  Compl. ¶ 20.

As part of its extensive marketing for the Film, Warner Bros. developed at least two websites featuring fictional but realistic-looking advertisements for its "Clean Slate" software. Compl. ¶ 22.  Internet users have expressed a keen interest in the potential existence of Warner Bros.' "Clean Slate" software and whether it could work in reality.  Compl. ¶ 24.  Warner Bros.' infringing use of Fortres Grand's CLEAN SLATE Mark has flooded the market; online searches for "clean slate" now return hundreds of results relating to the Warner Bros.' "Clean Slate" program.  *Id.*

Because of confusion by potential consumers between Warner Bros.' "Clean Slate" and Fortres Grand's CLEAN SLATE, and because of consumers' well-founded skepticism about fake and insidious security software, sales of Fortres Grand's CLEAN SLATE software have been cut by more than half since the Film's release.  Compl. ¶ 28.  The reputation and goodwill of the CLEAN SLATE Mark has been irreparably damaged and continues to be damaged. Compl. ¶¶ 25-28.

### III.     Standard of Review

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

3

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations in a complaint must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "A complaint need not contain detailed factual allegations to meet that standard," but merely "must 'be enough to raise a right to relief above the speculative level.'"  *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

In reviewing a motion to dismiss, courts "accept[] all well-pleaded factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff."  *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002).

**IV.     Argument**

       A.     First Amendment

Warner Bros. relies on the Second Circuit case *Rogers v. Grimaldi,* 875 F.2d 994 (2d Cir. 1989), to argue that the First Amendment permits use of Fortres Grand's CLEAN SLATE mark in an artistic work.  Warner Bros.' Motion to Dismiss (hereinafter "MTD") 9-18.  However, the *Rogers* framework does not apply to this case because this is a reverse confusion action in which the defendant uses plaintiff's mark in a confusingly similar *trademark* manner.

       1.     *Rogers* Does Not Apply in Reverse Confusion Cases

Fortres Grand alleges reverse confusion—a fact Warner Bros. never mentions in its brief.  Reverse confusion occurs when "a large junior user saturates the market with a trademark similar or identical to that of a smaller, senior user.  In such a case, the junior user does not seek to profit from the goodwill associated with the senior user's mark.  Nonetheless, the senior user is injured . . . " *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir. 1992).  That is the case here.  Fortres Grand was damaged by the reverse confusion resulting from Warner Bros' saturation of the market with its big-budget film and its promotional websites.

4

Following the release of the Film, consumers of security software seeking to learn about CLEAN SLATE Software instead find hundreds of references to Warner Bros' "Clean Slate," and consequently believe Fortres Grand's CLEAN SLATE Software may be somehow connected with nefarious malware. Compl. ¶ 24. The theory of reverse confusion applies to redress precisely this kind of harm.

*Rogers* protects First Amendment interests by permitting artists to refer to culturally relevant trade symbols and identities of others in certain well-defined circumstances. In a reverse confusion case, however, the more prominent junior user is not attempting to refer to the mark of the less prominent senior user. In other words, in a case of reverse confusion the defendant is not trying to use the plaintiff's mark expressively, or availing itself illegitimately of the plaintiff's reputation—the foundational rationale of *Rogers* and its progeny.

This principle was recognized in *Masters Software, Inc. v. Discovery Communications, Inc.*, 725 F. Supp. 2d 1294 (W.D. Wash. 2010). Kelley Masters, the owner of a federal trademark for CAKEBOSS for computer software for bakery business management sued the producer of a television show called *Cake Boss*, about the goings-on of a New Jersey cake bakery. Masters alleged reverse confusion after the vastly more visible *Cake Boss* show overwhelmed Masters' CAKEBOSS mark and business by confusing Masters' customers into believing Masters' CAKEBOSS business was associated with the *Cake Boss* show. In granting Masters' motion for preliminary injunction, the court recognized the inapplicability of *Rogers* to reverse confusion trademark matters and noted, "Masters' claim against Discovery does not implicate the First Amendment interests recognized in *Mattel* [*v. MCA Records*] and *Rogers*. Discovery did not choose the name of Cake Boss as an allusion to [Masters'] CakeBoss. Discovery was expressing nothing more than what any user of a suggestive trademark expresses

5

when branding its product, and the Lanham Act's limitations on such 'expressions' do not violate the First Amendment." 725 F. Supp. 2d at 1306.

Similarly, in *Rebelution, LLC v. Perez*, 732 F. Supp. 2d 883 (N.D. Cal. 2010), a reggae band called Rebelution sued the well-known musical artist Pitbull, who had used "rebelution" on his album cover, as part of the album's title. The *Rebelution* Court denied defendant's summary judgment motion and held that *Rogers* did not apply. *Rebelution*, 732 F. Supp. 2d at 888. Furthermore, the court noted that even if the *Rogers* test did apply, the "explicitly misleading" prong was ill-suited to reverse confusion cases. "It would be difficult, if not impossible, for [defendant] to demonstrate that he intended to refer to plaintiff when he used plaintiff's mark. [Defendant] concedes that prior to releasing his album, he had never heard of plaintiff." *Id.* at 889. For the reasons articulated in *Masters* and *Rebelution*, the analytic framework of *Rogers* does not apply to this case.

The cases cited by Warner Bros. in support of its contention that *Rogers* applies here overwhelmingly focus on well-known celebrities or mark owners and do not deal with reverse confusion. *See, e.g.*, *Mattel, Inc. v. MCA Records*, 296 F.3d 894 (9th Cir. 2002) (maker of BARBIE dolls sued band over band's parody song "Barbie Girl"); *University of Alabama Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d 1266 (11th Cir. 2012) (University of Alabama sued artist over artist's rendering of University's uniforms); *ETW v. Jireh Publ'g, Inc.*, 332 F.3d 915 (6th Cir. 2003) (golfer Tiger Woods' licensing agent sued publisher of artwork bearing Woods' image and Woods' name on artwork packaging). Therefore, unlike this case, they implicate the core *Rogers* purpose of protecting expressive uses of well-known cultural figures and symbols.

Warner Bros. claims that "[u]nder Rogers and the decisions that follow it, it is also clear that the First Amendment protects the defendant's use of the plaintiff's mark in an expressive

6

work regardless of whether the defendant intended to refer or allude to the plaintiff or its products." MTD at 13 n.7. All of the cases referred to in this footnote, however, are not applicable here. For example, the court in *Eastland Music Group LLC v. Lionsgate Entertainment, Inc.*, 2012 WL 2953188 (N.D. Ill. July 19, 2012), applied the *Rogers* test to dismiss a Lanham Act claim based on the defendant's film title because the parties did not contest the applicability of *Rogers*. The court "assume[d] *Rogers* controls without definitely deciding the question." *See id*. at *3. In contrast, Fortres Grand does not concede that *Rogers* applies. Furthermore, the court's decision did not turn on *Rogers* but was based simply on plaintiff's failure to adequately plead likelihood of confusion. *See id*. Here, in contrast, Fortres Grand has adequately pled likelihood of reverse confusion.[1] The court in *Webceleb, Inc. v. Procter & Gamble Co.* granted defendant's summary judgment motion based upon the "artistic relevance" test despite the fact that defendants were not referring to plaintiff's mark or product, even though every case cited in the decision to support the court's rationale did, in fact, involve a reference to the plaintiffs' marks and/or products. No. 10-CV-2318, --- WL --- (S.D. Cal. Sept. 25, 2012) (MTD, Ex. D).[2] Additionally, the *Webceleb* defendants did not use the term "web celeb" as a mark, but rather as a category in the People's Choice Awards. In contrast, Warner Bros. uses "Clean Slate" as a mark for the software in the Film. Finally, *Webceleb* makes no mention of reverse confusion.

---

[1] *Woodard v. Jackson*, 2004 WL 771244 (S.D. Ind. Mar. 25, 2004), likewise does not help Warner Bros. *Woodard* does not turn on *Rogers*. Rather, the court found that plaintiff's allegations of likelihood of confusion based on alleged misstatements "inside a sealed CD package" were "mere desperate speculation." *Id*. at *8. Moreover, plaintiff had no rights in its claimed mark because it had abandoned the mark. *Id*. at *9.

[2] Moreover, the same court denied defendants' motion to dismiss based upon the artistic relevance test. *See Webceleb, Inc. v. Procter & Gamble Co.*, 2012 WL 460472 (S.D. Cal. Feb. 13, 2012).

Because reverse confusion is incompatible with the *Rogers* balancing test, *Rogers* is not applicable here. Warner Bros.' motion to dismiss, to the extent it relies on *Rogers*, should be denied.

2. The *Rogers* Balancing Test Does Not Apply to Lanham Act Claims Involving Confusingly Similar Marks

Warner Bros. argues that its use of Fortres Grand's CLEAN SLATE Mark should be allowed because of First Amendment protections listed in *Rogers*. But *Rogers* itself makes clear that its balancing test does not apply when a defendant's use of a senior user's trademark makes it difficult to tell the two products apart.

*Rogers* explicitly excludes from its balancing test "misleading titles that are confusingly similar to other titles." *Rogers*, 875 F.2d at 999, n.5. As the court explained, "[t]he public interest in sparing consumers this type of confusion outweighs the slight public interest in permitting authors to use such titles." *Id.*

When a defendant uses a mark that is confusingly similar to a senior user's such that consumers are misled, the relevant standard remains the largely fact-driven likelihood of confusion analysis traditional in Lanham Act claims. *See, e.g. Rebelution, LLC v. Perez*, 732 F. Supp. 2d at 888 ("the relevant question is whether [defendant's] use of the word rebelution in his album title is confusingly similar to the title of plaintiff's album and band name. This determination is made by application of the *Sleekcraft* factors. . . . **[S]ince there exists a likelihood that the album titles could be confusingly similar, the First Amendment protections offered by *Rogers* do not apply**.") (emphasis added). Deceptive or misleading use of a trademark, like Warner Bros.' use of "Clean Slate," is not protected speech. "[T]he purchaser of a book, like the purchaser of a can of peas, has a right not to be misled as to the source [or content] of the product." *Rogers*, 875 F.2d at 997-98.

8

        3.      The "Rykin Data" Websites are Misleading Commercial Speech and Are Not Protected by the First Amendment

Warner Bros. argues at length that the Rykin Data websites (the "Websites") are artistic speech and protected by the First Amendment. MTD at 16-18.[3] This is not so. The Websites are standard commercial speech and should be examined under ordinary Lanham Act principles.

The Websites—commercial tie-ins to the Film and its merchandising—are deceptively designed to look like the real websites of a real company. They are so thoroughly misleading that consumers may believe the commercial transaction encouraged is one for the purchase of a software product developed by Warner Bros.

Warner Bros.' cited cases are unavailing because they do not address this novel form of advertising. In *Groden v. Random House*, 61 F.3d 1045, 1050 (2d Cir. 1995), and other cases cited by Warner Bros., the advertisements at issue identified (and pictured) the defendant's work and included images of plaintiff (under New York law, the court decided that the newspaper ad for defendant's book showing likeness of plaintiff was "incidental advertising" to the book). *See, also ETW Corp. v. Jireh Publishing*, 332 F.3d 915, 920, 925 (6th Cir. 2003) (involving the name and likeness of golfer Tiger Woods on an envelope containing a painting of Woods). They are obviously and unmistakably advertising those works.

Here, in contrast, the Websites did not mention Warner Bros. or the Film or the characters in the film, but instead purported to be the *real* websites of "Rykin Data." Unlike *Groden* and any other number of "incidental advertising" cases, these websites stood on their own and misled members of the public into thinking "Clean Slate" was a real product with real applications. The Websites explicitly mislead potential security software consumers into

---

[3] Fortres Grand objects to the introduction of the Websites on a motion to dismiss. *See infra*.

9

thinking that "Clean Slate" is an identity-erasing software that exists for use by the public and should therefore not be protected by the First Amendment.

> B.   The Rykin Data Website Screenshots Consist of Evidence Outside the Pleadings That May Not Be Considered on a Motion to Dismiss

In its motion to dismiss, Warner Bros. relies on printouts from two of its websites. MTD 8.  This is improper.

"Generally, matters outside the pleadings may not be considered" on a motion to dismiss. *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002).  There is a "narrow exception" to this rule known as the incorporation-by-reference doctrine.  *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).  Under this doctrine, documents that are "concededly authentic" may be incorporated by reference.  *Albany Bank & Trust Co.*, 310 F.3d at 971; *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7thCir. 2002).

Websites are not static documents.  They can be modified at any time and therefore pose special problems for authenticity.  Courts have therefore refused to consider them on motions to dismiss.  *See, e.g.*, *Powertronix Corp. v. PV Powered, Inc.*, C-08-5187 MMC, 2009 WL 102706, at *1 (N.D. Cal. Jan. 14, 2009) (refusing to consider the terms and conditions section of an electronic retailer's website in part because the version of the website defendant sought to admit might have been modified since the relevant transactions were made); *see also Curran v. Amazon.com, Inc.*, CIV.A. 2:07-0354, 2008 WL 472433, *14 (S.D.W. Va. Feb. 19, 2008) (noting authenticity problems concerning websites, disregarding website evidence on other grounds).

Warner Bros.' website printouts are anything but "concededly authentic," as required under *Albany Bank & Trust*, 310 F.3d at 971; *see also Curran*, 2008 WL 472433 at *14 (Because "[a] party's website is self-serving . . . there is no assurance that the content is authentic.").  In particular, they do not indicate how these websites appeared to potential consumers of Fortres

Grand's CLEAN SLATE Software who accessed these websites. Thus, Seventh Circuit precedent precludes consideration of Warner Bros.' website printouts on its motion to dismiss.

      C.     <u>Fortres Grand Alleges Actionable Consumer Confusion</u>

Warner Bros. asserts that Fortres Grand has not alleged and cannot allege *commercial*, and therefore actionable, confusion. MTD at 18-23. Warner Bros' argument is unavailing. The confusion alleged by Fortres Grand—that Warner Bros.' use of "Clean Slate" confused actual and potential Fortres Grand customers into associating Fortres Grand's CLEAN SLATE software with malware and, therefore, those consumers avoided Fortres Grand's products—goes to the core of what the Lanham Act seeks to prevent.

"Where the similarity [of marks] is sufficient to convey a false impression to the public mind, and is of a character to mislead and deceive the ordinary purchaser in the exercise of ordinary care and caution in such matters, it is sufficient to give the injured party a right to redress." *McLean v. Fleming*, 96 U.S. 245, 255 (1878), *superseded by statute on other grounds, as recognized by Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 170 (1995). That is what Fortres Grand has alleged: By its overwhelming use of Fortres Grand's CLEAN SLATE Mark on a similar but criminal product, Warner Bros. has destroyed the CLEAN SLATE Mark's "source-distinguishing ability, " *Qualitex*, 514 U.S. at 164, thereby causing massive consumer confusion and economic harm to Fortres Grand. This is precisely what trademark law is meant to prevent. *Qualitex*, *id*.[4]

---

[4] The fictitious nature of Warner Bros.' software contributes to the commercial effect of the confusion between the real goods and the fictional goods. Whether confusion is likely must be considered in the context in which the goods are sold. *See G. D. Searle & Co. v. Charles Pfizer & Co.*, 265 F.2d 385, 388 (7th Cir. 1959) ("Since it is the effect upon prospective purchasers that is important, the conditions under which they act must be considered."). Fortres Grand's CLEAN SLATE Software is sold in a market cluttered with fictitious, malicious goods, meaning that the fictitious nature of Warner Bros.' "Clean Slate" heightens, rather than eliminates, the likelihood that confusion as to Fortres Grand's product is going to affect consumers' purchasing decisions.

Warner Bros. asks this Court to dismiss this complaint by making only a narrow comparison between Fortres Grand's CLEAN SLATE software and the Film itself. MTD at 20-22. This is a formalistic argument. It ignores the commercial reality that consumers are confused between Fortres Grand's real-world product and Warner Bros.' fictional one, as Fortres Grand has alleged. Warner Bros.' argument appears to be based, at least in part, on a misunderstanding of Fortres Grand's reverse confusion argument. Warner Bros. asserts that "[t]he only purchasing decision made by a consumer of *The Dark Knight Rises* is whether to buy a movie theater ticket or purchase a DVD or Blu-ray of the film." MTD at 20. However, because this is an action for reverse confusion, it is potential consumers of Fortres Grand's software whose purchasing decisions are relevant. These potential consumers, inundated with Warner Bros.' "Clean Slate" Software in its film and advertising and the resulting Internet references to this software, are confused as to the origin of Fortres Grand's CLEAN SLATE Software.

Warner Bros.' further argues that Fortres Grand's complaint must be dismissed based merely on the supposed dissimilarity between the parties' goods. MTD at 20-22. This argument is contradicted by Seventh Circuit law. The Seventh Circuit analyzes likelihood of consumer confusion by considering seven factors. *See Helene Curtis Industries, Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1330 (7th Cir. 1977) (listing similarity of marks; similarity of products; area and manner of concurrent use; degree of care likely to be exercised by consumers; strength of complainant's mark; actual confusion; and alleged infringer's intent). At its core, Warner Bros.' argument is that because one of the Seventh Circuit likelihood-of-confusion factors— "the similarity of the products for which the name is used"—tilts in its favor, this entire case ought to be dismissed. *Helene Curtis*, 560 F.2d at 1330. However, "[n]one of the seven confusion factors

12

alone is dispositive in a likelihood of confusion analysis." *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 616 (7th Cir. 1993) (emphasis added). As the Seventh Circuit has held, "[t]he fact that the products at issue may be 'very different' is not dispositive of the issue of the similarity of the products in determining the existence of a likelihood of confusion between products." *McGraw-Edison Co. v. Walt Disney Producions*, 787 F.2d 1163, 1169 (7th Cir. 1986) (reversing summary judgment ruling that confusion was unlikely between TRON for movie and video games and TRON for electrical fuses) (emphasis added); *see also id* at 1168 ("[T]his court has reversed lower court decisions that have placed excessive importance on certain factors.").

Warner Bros. argument relies on two cases from other district courts.[5] MTD at 21-22 (citing *Ocean Bio-Chem, Inc. v. Turner Network Television, Inc*, 741 F. Supp. 1546 (S.D. Fla. 1990) and *Davis v. Walt Disney Co.*, 393 F. Supp. 2d 839 (D. Minn. 2005)). But in neither case did the court determine as a matter of law that plaintiff's infringement action failed merely because of the dissimilarity between plaintiff's products and defendant's movies; instead, in both cases the court actually denied the defendant's motion to dismiss, and only granted summary judgment after examining each of the circuit factors to determine whether confusion was likely. *See Ocean Bio-Chem*, 741 F. Supp. at 1553-61 (applying Eleventh Circuit's seven-factor test); *Davis*, 393 F. Supp. 2d at 845-46 (applying the Eighth Circuit's six-factor test).

Nonetheless, Warner Bros.' asserts that "it is absurd to think that anyone contemplating a purchase of [Fortres Grand's] "Clean Slate" product would believe it originated from or was sponsored by the Warner Bros. movie studio." MTD at 20. This ignores Fortres Grand's

---

[5] Warner Bros. also cites to three other cases –*Zeocrystal Industries, Inc. v. Fox Broadcasting Co.*, 923 F. Supp. 132 (N.D. Ill. 1996); *Caterpillar Inc. v. Walt Disney Co.*, 287 F. Supp. 2d 913 (C.D. Ill. 2003); and *Wham-O, Inc. v. Paramount Pictures Corp.*, 286 F. Supp. 2d 1254 (N.D. Cal. 2003)—which are inapposite to this one. In none of these cases did the court address reverse confusion, and in the latter two the allegedly infringed marks were so well-known that a reverse confusion claim would have been nonsensical.

13

allegation—which must be taken as true—that Warner Bros.' use of Fortres Grand's CLEAN SLATE Mark caused actual consumer confusion that has proved ruinous to Fortres Grand's sales of CLEAN SLATE Software. Further, this assertion is undermined by the fact that Warner Bros. products are not confined to films, but include, among other things, software.[6] Warner Bros. attempts to avoid this problem by saying that it does not sell "computer security programs." MTD at 20. This only highlights the problem with Warner Bros.' use of Fortres Grand's CLEAN SLATE Mark; based on its use of the mark in the Film and Websites, consumer confusion exists as to whether Fortres Grand's CLEAN SLATE Software is a legitimate security program. Warner Bros. is incorrect that the confusion alleged by Fortres Grand is not actionable, and its motion to dismiss on this ground ought to be denied.

> D.   Warner Bros.' Repeated Use of "Clean Slate" as the Name of a Computer Hacking Software Is Not a Fair Use

Warner Bros. argues its use of "Clean Slate" in the Film and the Websites is a fair use because it is descriptive of the software in the Film. The fair use defense applies when a defendant uses a disputed term "otherwise than as a mark… [and] only to describe [its] goods," 15 U.S.C. § 1115(b)(4). Warner Bros.' use of the name "Clean Slate," to refer to software is anything but fair. Warner Bros. uses "Clean Slate" as an "attention-getting symbol" and therefore as a trademark. *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 954 (7th Cir. 1992).

The "attention-getting" character of Warner Bros.' "Clean Slate" mark is frequently on display. Throughout *The Dark Knight Rises*, characters refer to "Clean Slate" to indicate a specific software emanating from a specific source. The following examples show this:

---

[6] Of course, without discovery, it is impossible for Fortres Grand to know or plead the extent to which Warner Bros. produces or licenses software, but this fact only highlights how premature the ruling is that Warner Bros. seeks.

14

> Catwoman: Where is it?
> John Daggett: Where's what?
> Catwoman: The Program—the Clean Slate?
> Daggett: The ultimate tool for a master thief with a record.
> Daggett's Associate: (pointing gun at Catwoman) Hold it right there.
> [Catwoman jumps out a window, taking Daggett with her]
> Catwoman: Where is it?
> Daggett: The Clean Slate?  Where you type in someone's name, date of birth, in a few minutes they're gone from every database on earth.  Sound a little too good to be true?
> Catwoman: You're lying.  Rykin Data took it to prototype stage.
> Daggett: That's why I bought them. . . .
> Def. Ex. A at 1:52:05-1:52:52.

Later in the film, when Catwoman meets with Batman, she brings up the software again, saying "[Bruce] Wayne says you can get me the Clean Slate."  As before, she refers to the specific software by name, and as before another character understands to which good she refers merely by her use of the name "Clean Slate": although Catwoman does not describe the software at all, or even indicate that she is talking about software, Batman's responds, "I acquired it to keep it out of the wrong hands."  Def. Ex. A at 2:10:14-2:10:23.

Another trademark use occurs near the end of the Film.  Batman once again uses "Clean Slate" as a name to refer to a specific software program.  When he tells Catwoman, "I need your help," she responds, "And why would I help you?"  Here Batman, extending what appears to be a flash drive, says, "for this—Clean Slate."  Def. Ex. A at 3:00:59-3:01:08.

Warner Bros.' websites make even clearer that it is using "Clean Slate" in a trademark sense.  On <rykindata.tumblr.com>, "Rykin Data" hyperlinks to "Clean Slate," which takes consumers to <rykindata.tumblr.com/cleanslate>, which page includes text headed, "PROGRAM: *CLEAN SLATE*."  This name does not function as a descriptive use of this term, but as a source-identifying mark.  This, along with the uses of "Clean Slate" in the Film, is not fair use.

15

Warner also argues that its use is fair because "Warner Bros.' own trademarks are prominently displayed at the beginning and end of the Film and on the DVD/Blu-ray packaging." MTD 24. But "a defendant's use of a term in conjunction with its own trademark [is not] *per se* a use other than as a trademark." *Sands, Taylor & Wood*, 978 F.2d at 954 (internal quotation omitted). The mere fact that Warner Bros. displays its own trademark at the beginning and end of the Film does not change its trademark use of "Clean Slate" to a descriptive fair use. Because Warner Bros. uses Clean Slate as a trademark throughout its Film and on its Websites, it is not entitled to a fair use defense.

## V.     Conclusion

For the reasons discussed above, Fortres Grand respectfully requests that the Court deny Warner Bros.' motion in its entirety.

Respectfully submitted,

MAY • OBERFELL • LORBER

/s/Christopher R. Putt
Christopher R. Putt
4100 Edison Lakes Parkway, Suite 100
Mishawaka, IN 46545
Telephone: (574) 243-4100
Facsimile: (574) 232-9789


PATTISHALL, McAULIFFE, NEWBURY,
HILLIARD & GERALDSON LLP

Phillip Barengolts
Elisabeth K. O'Neill
311 South Wacker Drive, Suite 5000
Chicago, Illinois 60606
Telephone: (312) 554-8000
Facsimile: (312) 554-8015

*Attorneys for Plaintiff Fortres Grand Corp.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing **RESPONSE TO MOTION TO DISMISS** was filed electronically with the United States District Court on January 28, 2013. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

/s/Christopher R. Putt