# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA

FORTRES GRAND CORPORATION,
an Indiana corporation,

        Plaintiff,

   v.

WARNER BROS. ENTERTAINMENT
INC., a Delaware corporation,

        Defendant.

No. 3:12-cv-00535-PPS-CAN

## DEFENDANT WARNER BROS. ENTERTAINMENT INC.'S
## REPLY MEMORANDUM
## IN SUPPORT OF MOTION TO DISMISS

**Jenner & Block LLP**
Keith V. Porapaiboon
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

Andrew H. Bart (admitted *pro hac vice*)
919 Third Avenue, 37th Floor
New York, NY 10022-3908
(212) 891-1600

Andrew J. Thomas (admitted *pro hac vice*)
633 W. Fifth Street, 36th Floor
Los Angeles, CA 90071
(213) 239-5100

Dated: February 28, 2013

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................................. 1

II.  ARGUMENT ..................................................................................................................... 2

    A.   Plaintiff Fails To State A Trademark Infringement Claim Because

          It Does Not Allege Actual Purchaser Confusion Involving Real Products ................. 2

    B.   Warner Bros.' Descriptive Use Of The Common Phrase Clean Slate

          Is Also Protected By The Trademark Fair Use Doctrine ............................................ 7

    C.   The First Amendment Provides A Complete Defense To Plaintiff's Claims .............. 8

        1.   The *Rogers v. Grimaldi* Framework Applies To All Lanham Act

             Claims For Trademark  Infringement ................................................................. 8

        2.   The First Amendment Protects The Web Site Promotions To The

             Same Extent As The  Motion Picture .................................................................. 13

III.  CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*AHP Subsidiary Holding Co. v. Stuart Hale Co.*,
  1 F.3d 611 (7th Cir. 1993) ...................................................................................3

*Ameritech, Inc. v. American Information Technologies Corp.*,
  811 F.2d 960 (6th Cir. 1987) ...............................................................................2

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Group, Inc.*,
  886 F.2d 490 (2d Cir. 1989)..................................................................................8

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23, 123 S. Ct. 2041 (2003) ....................................................................6

*Davis v. Walt Disney Co.*,
  393 F. Supp. 2d 839 (D. Minn. 2005), *aff'd*, 430 F.3d 901 (8th Cir. 2005) ............5

*DeClemente v. Columbia Pictures Industries, Inc.*,
  860 F. Supp. 30 (E.D.N.Y. 1994) .....................................................................6, 9

*Dreamwerks Prod. Group, Inc. v. SKG Studio*,
  142 F.3d 1127 (9th Cir. 1998) .............................................................................2

*E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*,
  547 F.3d 1095 (9th Cir. 2008) ...............................................................10, 11, 12

*Eastland Music Group, LLC v. Lionsgate Entertainment, Inc.*,
  2012 WL 2953188 (N. D. Ill. July 19, 2012)......................................................10

*Eastland Music Group, LLC v. Lionsgate Entertainment, Inc.*,
  -- F.3d --, 2013 WL 628273 (7th Cir. Feb. 21, 2013)......................................6, 10

*Facebook, Inc. v. Teachbook.com LLC*,
  819 F. Supp. 2d 764 (N.D. Ill. 2011) ...................................................................6

*Fred A. Smith Lumber Co. v. Edidin*,
  845 F.2d 750 (7th Cir. 1988) .............................................................................14

*Helene Curtis Industries, Inc. v. Church & Dwight Co.*,
  560 F.2d 1325 (7th Cir. 1977) .............................................................................3

*Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.*,
  326 F.3d 687 (6th Cir. 2003) ...............................................................................2

*Kelly-Brown v. Winfrey*,
 2012 WL 701262 (S.D.N.Y. Mar. 6, 2012) ...........................................................6

*L.L. Bean, Inc. v. Drake Publishers, Inc.*,
 811 F.2d 26 (1st Cir. 1987), *cert. denied*, 483 U.S. 1013 (1987) ...............................3

*Lucasfilm Ltd. v. High Frontier*,
 622 F. Supp. 931 (D.D.C. 1985) .........................................................................3

*Masters Software, Inc. v. Discovery Communications, Inc.*,
 725 F. Supp. 2d 1294 (W.D. Wash. 2010) .................................................8, 11, 12

*Mattel, Inc. v. MCA Records, Inc.*,
 296 F.3d 894 (9th Cir. 2002), *cert. denied*, 537 U.S. 1171 (2003).........................11

*McGraw-Edison Co. v. Walt Disney Productions*,
 787 F.2d 1163 (7th Cir. 1986) ...........................................................................3

*Miller Brewing Co. v. G. Heileman Brewing Co.*,
 561 F.2d 75 (7th Cir. 1977) ...............................................................................4

*Ocean Bio-Chem, Inc. v. Turner Network Television, Inc.*,
 741 F. Supp. 1546 (S.D. Fla. 1990) .....................................................................5

*Packman v. Chicago Tribune Co.*,
 267 F.3d 628 (7th Cir. 2001) .............................................................................4

*Park v. City of Chicago*,
 297 F.3d 606 (7th Cir. 2002) ...........................................................................15

*Peaceable Planet, Inc. v. Ty, Inc.*,
 362 F.3d 986 (7th Cir. 2004), *cert. denied*, 543 U.S. 869 (2004)............................6

*Qualitex Co. v. Jacobson Products Co.*,
 514 U.S. 159, 115 S. Ct. 1300 (1995)...................................................................3

*Rebelution, LLC v. Perez*,
 732 F. Supp. 2d 883 (N.D. Cal. 2010) ...................................................10, 11, 12

*Rogers v. Grimaldi*,
 875 F.2d 994 (2d Cir. 1989)...................................................................... passim

*Roxbury Entertainment v. Penthouse Media Group, Inc.*,
 669 F. Supp. 2d 1170 (C.D. Cal. 2009) ..............................................................10

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*,
 978 F.2d 947 (7th Cir. 1992) .....................................................................2, 3, 7

iii

*Solid 21, Inc. v. Breitling USA, Inc.*,
  2011 WL 2938209 (C.D. Cal. July 19, 2011) ...........................................................................6

*Stewart Surfboards, Inc. v. Disney Book Group, LLC*,
  2011 U.S. Dist. LEXIS 155444 (C.D. Cal. May 11, 2011) ....................................................11

*Sunmark., Inc. v. Ocean Spray Cranberries, Inc.*,
  64 F.3d 1055 (7th Cir. 1995) ....................................................................................................4

*Tierney v. Vahle*,
  304 F.3d 734 (7th Cir. 2002) ..................................................................................................15

*Webceleb, Inc. v. Procter & Gamble Co.*,
  No. 10-CV-2318 (S.D. Cal. Sept. 25, 2012) ......................................................................9, 12

*Zeocrystal Industries, Inc. v. Fox Broadcasting Co.*,
  923 F. Supp. 132 (N.D. Ill. 1996) ............................................................................................5

## OTHER AUTHORITIES

4 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS § 23:11 (4th ed. 2012) ...........................6

Federal Rule of Civil Procedure 11 .........................................................................................14

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................6

## I.      INTRODUCTION

In its Opposition, Plaintiff Fortres Grand Corp. all but ignores the most striking fact about the Complaint: that it alleges trademark infringement based entirely on descriptions of a ***make-believe*** product in a fictional motion picture – specifically, an imaginary software program that Batman obtains for Catwoman in *The Dark Knight Rises*.  Plaintiff is unable to cite any case holding that a trademark claim can be stated when the allegedly offending product does not exist and cannot be purchased.  Plaintiff instead cites cases addressing run-of-the-mill trademark claims about real products that actually exist in the real-world marketplace.  The fictional software program that figures in *The Dark Knight Rises*, however, is not a real product and Plaintiff consequently does not have a real trademark claim.

Moreover, the First Amendment plainly protects Warner Bros.' use of the descriptive phrase "clean slate" to refer to a fictional product that is relevant to the plot of its fictional Batman film.  Plaintiff never disputes and thus concedes that it cannot prevail on either prong of the two-part First Amendment balancing test set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989).  Instead, Plaintiff makes an unsupported and illogical argument that the First Amendment provides no protection at all in the context of a "reverse confusion" trademark infringement claim.  In its desperate efforts to avoid dismissal, Plaintiff ignores directly relevant authority, misreads the cases it does cite, mischaracterizes the content of the Film, and ignores the content of the alleged promotional websites identified in the Complaint and the case law holding that they are likewise protected under the First Amendment.

Because Plaintiff has failed to allege any actionable confusion between actual products, and because the First Amendment fully protects the use of the descriptive phrase "clean slate" to refer to a fictional product depicted in a movie, Plaintiff's claims should be dismissed.

## II.    ARGUMENT

As explained in Warner Bros.' Motion, its use of the phrase "clean slate" in a fictional, expressive work is protected under the First Amendment regardless of whether Plaintiff is proceeding on a forward confusion or reverse confusion theory of trademark infringement.  But before the Court has any need to consider Warner Bros.' First Amendment defenses, the action must be dismissed based on Plaintiff's threshold failure to allege a prima facie claim of trademark infringement based on actionable confusion among purchasers of actual products.[1]

### A.    Plaintiff Fails To State A Trademark Infringement Claim Because It Does Not Allege Actual Purchaser Confusion Involving Real Products.

As the authorities cited by Plaintiff make clear, a reverse confusion claim focuses on real-world trademark users and their real-world products, addressing a situation where "the public comes to assume that the senior user's *products* are really the junior user's."  *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir. 1992) (quoting *Ameritech, Inc. v. American Info. Technologies Corp.*, 811 F.2d 960, 964 (6th Cir. 1987)) (emphasis added); *accord Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998) ("The question [in a reverse confusion case] … is whether consumers doing business with the senior user might mistakenly believe they are dealing with the junior user.").

Plaintiff fails to allege any confusion between its "Clean Slate" product and any actual product sold by Warner Bros.  It is undisputed that *The Dark Knight Rises* (the "Film") and the websites noted in the Complaint use the phrase "clean slate" only in reference to an entirely fictional product and not in reference to any actual product sold in commerce (such as the Film itself).  Because Warner Bros. has not used the phrase "clean slate" as a trademark for any

---

[1] Plaintiff does not dispute that its state law claims are governed by the same analysis as its Lanham Act claims and therefore must rise or fall with the federal claims.  *See* Motion at 11-12.

product, Plaintiff cannot state a claim for trademark infringement.  *See*, *e.g.*, *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 695 (6th Cir. 2003) (infringement laws do not apply when mark is used "in a non-trademark way").[2]  Indeed, where defendants have used trademarks as part of a communicative message, rather than as a source-identifier of actual goods or services, courts consistently have held that no trademark infringement claim can be stated.  *E.g.*, *Lucasfilm Ltd. v. High Frontier*, 622 F. Supp. 931, 933-35 (D.D.C. 1985) (plaintiff film company had no right to prevent use of the phrase "Star Wars" by advocacy groups opposed to the Reagan Administration Strategic Defense Initiative).[3]

Plaintiff does not and cannot cite any decision where a court has upheld a reverse confusion claim based on the defendant's use of a trademarked phrase in reference to a non-existent, wholly fictional product that exists only within the realm of a fictional expressive work. Not surprisingly, all of the cases cited by Plaintiff involved claims where the defendant used the mark to refer to products or services that actually exist in the real world.  *See* Opp. at 11-13.[4]

This failure to allege confusion between actual, real-world products alone is sufficient to justify dismissal of the action.  Moreover, Warner Bros.' use of the phrase "clean slate" was entirely descriptive, and not a trademark use, and is thus not actionable for this additional reason.

---

[2] Plaintiff's unsupported speculation that Warner Bros.' products "include, among other things, software" (Opp. at 14) does nothing to change the analysis.  Plaintiff does not allege Warner Bros. has used "clean slate" on any software program or any other product.

[3] *See also L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 29 (1st Cir. 1987) (non-advertising parody was protected by the First Amendment, since "[t]rademark rights do not entitle the owner to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view").

[4] *E.g.*, *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 161 (1995) (pads used on dry cleaning presses); *Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1328 (7th Cir. 1977) (deodorant and antiperspirant products); *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 613 (7th Cir. 1993) (nonstick cooking sprays); *Sands, Taylor & Wood*, 978 F.2d at 950 ("Thirst-Aid" mark used with Gatorade sports drink); *McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1165-66 (7th Cir. 1986) ("Tron" mark used as title of motion picture and video game and on merchandise including t-shirts, posters, board games and toy figures).

Contrary to Plaintiff's assertions (*e.g.*, Opp. at 3, 7, 14-15), even within the fictional world of the Film, the software program does not in fact bear a "Clean Slate" trademark. Instead, as Plaintiff's own quotations of the Film show, the program is referred to descriptively as "*the* clean slate" or "*a* clean slate."  See Opp. at 15; RJN, Ex. A at 1:51:10 – 1:52:56, *id.* at 2:10:06 – 2:10:36.  The same is true for the "clean slate" references on the websites identified in the Complaint, which explain, for instance, that the fictional software "effectively grant[s] the subject a clean slate within the digital world."  *See* RJN, Ex. C at 1, 3; Motion at 4-6.[5]  Such uses are descriptive in that they refer to a characteristic of the fictional software program depicted in the Film – *i.e.*, to its supposed ability to allow someone like Catwoman to make a fresh start in life with a "clean slate."  *See Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir. 1977) (explaining descriptive uses of marks); *accord Packman v. Chicago Tribune Co.*, 267 F.3d 628, 640 (7th Cir. 2001); *Sunmark., Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055, 1059 (7th Cir. 1995).

But even if the Film and the websites *had* used "clean slate" as a fictional trademark for the software program that Catwoman seeks, Plaintiff still could not state a viable claim for trademark infringement.  Where trademark owners have sued based on the use of a mark in relation to a fictional product described in a television show or movie, courts uniformly have held that the relevant inquiry is whether there is any likelihood of confusion as to the source of the parties' *actual* products – in this case, Plaintiff's computer program and Warner Bros.'

---

[5] Plaintiff also misrepresents its own allegations in the Complaint.  Especially disingenuous is Plaintiff's assertion that the fictitious nature of the "clean slate" program depicted in the Film "heightens, rather than eliminates" the likelihood of confusion because the software market is "cluttered with fictitious, malicious goods."  Opp. at 11 n.4.  But the malicious goods ("malware") that Plaintiff refers to in its Complaint (and elsewhere in its Opposition) are *not* "fictitious" or make-believe products.  They are actual products, just deceptive or fraudulent ones – harmful software "disguised as security software."  *See* Opp. at 1; Cmplt. ¶¶ 13-15.  In contrast, the software in the Film is fictional and cannot be purchased or otherwise obtained.

motion picture.  *See* Motion at 21-22 (discussing *Davis v. Walt Disney Co.*, 393 F. Supp. 2d 839 (D. Minn. 2005); *Zeocrystal Indus., Inc. v. Fox Broadcasting Co.*, 923 F. Supp. 132 (N.D. Ill. 1996); and *Ocean Bio-Chem, Inc. v. Turner Network Television, Inc.*, 741 F. Supp. 1546 (S.D. Fla. 1990).  But the Complaint does not allege any confusion between Plaintiff's computer program and Warner Bros.' Film.  Far from alleging a "worst-case scenario of reverse confusion" (Opp. at 1), Plaintiff has failed to allege *any* claim for confusion between actual products in the marketplace.[6]

This is not a "formalistic argument" (Opp. at 12).  It is a distinction between real things and imaginary things.  As Warner Bros. explained in its Motion, Plaintiff is not in the motion picture business, and it would be absurd to think that customers buy tickets to *The Dark Knight Rises* or purchase the DVD/Blu-ray because of a perceived association of the Film with Fortres Grand's products.  Conversely, Warner Bros. is not in the business of selling computer security programs, and it would be absurd to think that anyone contemplating a purchase of Plaintiff's product would believe that it originated from or was sponsored by the Warner Bros. film studio.

As a substitute for allegations of actual purchaser confusion regarding actual products, Plaintiff attempts to rely on alleged speculation by Internet bloggers and Twitter users about whether a fictional software program described in Warner Bros.' fantastical "Batman" movie

---

[6] Plaintiff's hyperbolic claim that references to the fictional software program from *The Dark Knight Rises* are "ubiquitous" on the Internet is belied by a simple Google search for "clean slate" or "clean slate software," both of which return Plaintiff's website among the top five search results.  A search for "clean slate" also returns among the search results a job training program, a credit counseling service, a gang recovery program, online dictionary definitions, a 1994 movie titled *Clean Slate* starring Dana Carvey, an addiction treatment center, a tattoo removal service, and a gutter cleaning service – but *no references* to *The Dark Knight Rises*.  A search for "clean slate software" yields Plaintiff's website as the very first result.  The first-page search results also provide at least a clue as to why Plaintiff's revenues allegedly have dropped. *See*, *e.g.*, http://community.spiceworks.com/topic/240561-fortres-grand-clean-slate-absolutely-rubbish (customer complaint that Fortres Grand's product "basically doesn't work").

"could potentially work" (Cmplt. ¶ 24). But this is precisely the sort of amorphous "confusion in the air" that courts have held to be nonactionable under the Lanham Act. *See* Motion at 18-20; *Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 993 (7th Cir. 2004) (observing in reverse confusion case that "[t]he purpose of trademark law … is to prevent confusion by consumers concerning the sources of the products they buy").[7] As the Seventh Circuit recently explained, "[o]nly a confusion about origin supports a trademark claim, and 'origin' for this purpose means the 'producer of the tangible product sold in the marketplace.'" *Eastland Music Group, LLC v. Lionsgate Entm't, Inc.*, -- F.3d --, 2013 WL 628273, at *2 (7th Cir. Feb. 21, 2013) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31 (2003)).

Because Plaintiff cannot plausibly assert any trademark claim based on confusion among actual purchasers of actual products, the lawsuit should be dismissed. *See, e.g., Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 774-84 (N.D. Ill. 2011) (applying *Iqbal/Twombly* plausibility standard to trademark claims).[8] The Seventh Circuit followed precisely this approach in its recent decision in *Eastland Music*, upholding a Rule 12(b)(6) dismissal of a trademark infringement claim by a rap duo called "Phifty-50" against the producers of the motion picture *50/50*. The court held that the complaint "fails at the threshold: it does not allege that the use of '50/50' as a title has caused any confusion about the film's source – and any such allegation would be too implausible to support costly litigation." *Eastland Music*, -- F.3d --, 2013 WL 628273 at *1 (citing *Iqbal* and *Twombly*).

---

[7] *See also DeClemente v. Columbia Pictures Indus., Inc.*, 860 F. Supp. 30, 47 (E.D.N.Y. 1994) (explaining in reverse confusion case that "[t]he relevant confusion is that which affects the purchasing and selling of the goods and services in question"); 4 MCCARTHY ON TRADEMARKS § 23:11 (4th ed. 2012) ("In 'reverse confusion,' customers purchase the senior user's goods under the mistaken impression that they are getting the goods of the junior user.").

[8] Courts also have applied this plausibility requirement in dismissing trademark claims based on reverse confusion theories. *See Kelly-Brown v. Winfrey*, 2012 WL 701262 (S.D.N.Y. Mar. 6, 2012); *Solid 21, Inc. v. Breitling USA, Inc.*, 2011 WL 2938209 (C.D. Cal. July 19, 2011).

**B.**    **Warner Bros.' Descriptive Use Of The Common Phrase Clean Slate Is Also Protected By The Trademark Fair Use Doctrine.**

Even assuming Plaintiff could state a prima facie claim for trademark infringement based on the use of the phrase "clean slate" in a fictional feature film, the use nonetheless would be protected under trademark law's fair use doctrine, which provides a separate and independent basis for dismissing Plaintiff's claims.  *See* Motion at 23-25.  Plaintiff makes no effort to distinguish any of the authorities cited by Warner Bros., which compel the conclusion that the descriptive, non-trademark use of the phrase "clean slate" in the Film and on the websites referenced in the Complaint constitutes a classic fair use.

Instead, Plaintiff asserts that Warner Bros. used the phrase "frequently" and "throughout" *The Dark Knight Rises* as an "attention-getting symbol."  (Opp. at 14)  This assertion grossly exaggerates the "frequency" with which the phrase appears in the Film, and is based on a disingenuous reading by Plaintiff of the cases it cites.  In fact, the phrase is used just four times in the course of the nearly three-hour movie.  *See* RJN, Ex. A at 1:52:08, 1:52:30, 2:10:15, and 3:01:04.  Furthermore, in *Sands, Taylor* – the case from which Plaintiff takes the "attention-getting symbol" language – the court considered the defendant's prominent use of the phrase "Thirst-Aid" *in conjunction with* the "Gatorade" trademark in ads for the defendant's sports drink, as part of an advertising slogan in which "the words 'Thirst Aid' [often appear] more prominently and in larger type than does the word 'Gatorade.'"  978 F.2d at 954.  Here, by contrast, there is no allegation (nor could there be) that the phrase "clean slate" has been used in conjunction with the title *The Dark Knight Rises* or with Warner Bros.' name in the opening or closing credits of the Film, on movie posters, on any websites, or on the Film's DVD packaging.

7

**C.      The First Amendment Provides A Complete Defense To Plaintiff's Claims.**

Even if Plaintiff's deficient allegations could state a prima facie claim for trademark infringement, any such claim would be barred by the First Amendment because the challenged uses of the phrase "clean slate" all occur within a fictional, creative work (the Film) or in alleged promotional websites advertising the Film.

**1.      The *Rogers v. Grimaldi* Framework Applies To All Lanham Act Claims For Trademark Infringement.**

Plaintiff does not dispute that *The Dark Knight Rises* constitutes creative expression fully protected by the First Amendment.  *See* Motion at 9.  As Warner Bros. demonstrated in its Motion, courts across the country have embraced the two-pronged test set forth in *Rogers* as being "generally applicable to Lanham Act claims against works of artistic expression."  *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Group, Inc.*, 886 F.2d 490, 495 (2d Cir. 1989); Motion at 10-12.  Nor does Plaintiff dispute that, if *Rogers* applies here, Warner Bros. easily satisfies both prongs of the test:  that the phrase "clean slate" has artistic relevance to the Film and that the Film's use of that phrase is not explicitly misleading.  *See* Motion at 12-15.

Instead, Plaintiff's sole response is to argue that because it has asserted a claim for reverse confusion under the Lanham Act, the First Amendment offers no protection whatsoever to Warner Bros. for its use of the phrase "clean slate" within an expressive work.  This argument is meritless.  **First**, Plaintiff cannot cite a single case holding that *Rogers* has no application to reverse confusion claims.  The case on which Plaintiff primarily relies – *Masters Software, Inc. v. Discovery Communications, Inc.*, 725 F. Supp. 2d 1294 (W.D. Wash. 2010) – does not so hold.  Contrary to Plaintiff's misleading discussion of that case, the court in fact *expressly declined* to decide the question.  *See* 725 F. Supp. 2d at 1406 n.7.

**Second**, to the extent courts have considered the application of *Rogers* to reverse confusion claims, they have held that it does apply. For example, in *DeClemente v. Columbia Pictures*, *supra*, the court held as a matter of law that the *Rogers* First Amendment analysis prevented the owner of a registered trademark for "The Karate Kid" (for karate exhibitions and training) from establishing a reverse confusion claim against Columbia Pictures based on its distribution of the motion picture *The Karate Kid* and its two sequels. *See* 860 F. Supp. at 51-52.

The *Webceleb* decision cited in Warner Bros.' Motion also supports this proposition. *See* RJN, Ex. D. The case plainly involved a reverse confusion claim.[9] The court nonetheless applied *Rogers*, rejecting the plaintiff's argument that the defendant had to "make artistic reference to plaintiff's product." The court made clear, to the contrary, that a defendant's use of the trademarked term only "has to be artistically relevant to their own product, not Plaintiff's product." *See Webceleb, Inc. v. Procter & Gamble Co.*, No. 10-CV-2318, slip op. at 8 (S.D. Cal. Sept. 25, 2012). It held as a matter of law that *Rogers* was satisfied because the defendants' use of "web celeb" had "some artistic relevance to the underlying awards show category" and was not explicitly misleading because it was "plainly linked to the awards show." *Id.*

**Third**, Plaintiff grounds its argument on the premise that *Rogers* has no application unless the plaintiff's mark has attained widespread fame or "cultural relevance" (Opp. at 5) – an argument that has been rejected by courts across the country. It is well established that the artistic relevance prong of the *Rogers* test is satisfied so long as the defendant's use of the mark has at least some "above zero" relevance to the underlying work – that is, to the *defendant*'s

---

[9] The plaintiff, the alleged senior user, operated a little-known website that provided an "online social marketplace" to bring together independent musicians and music fans. *Id.*, slip op. at 2. The defendants, by contrast, were sponsors of the well-known People's Choice Awards, which featured an award category for celebrities who demonstrated a strong Internet presence, called the "Favorite Web Celeb" award. *Id.* There was no suggestion that the defendants intended to refer to the plaintiff's mark or that they even knew about.

work.  *E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008); *see also* Motion at 12-13.  As the Ninth Circuit's *E.S.S.* decision illustrates, the First Amendment protects the defendant's use of the plaintiff's mark in an expressive work regardless of whether the plaintiff's mark is well-known or whether defendant intends to comment on the plaintiff or its products.  *Id.* at 1099 (depiction of fictional strip club in videogame was protected under *Rogers* even though defendant did not use the fictional club to "describe" or "comment on" the plaintiff's business).

Similarly, in *Roxbury Entertainment v. Penthouse Media Group, Inc.*, 669 F. Supp. 2d 1170 (C.D. Cal. 2009), the court applied *Rogers* to hold that the First Amendment protected the defendants' use of the term "Route 66" in the title of its adult film because the term evoked mental imagery – "road trips" and "cross-country travel" – that had at least some "tenuous" artistic relevance to the content of the defendants' film, and *not* because the defendants had any intention of referring or alluding to the plaintiff's 1960s television series.  *See id.* at 1176.

Likewise, in *Eastland Music Group v. Lionsgate Entertainment*, 2012 WL 2953188, at *3 (N. D. Ill. July 19, 2012), *aff'd on other grounds*, -- F.3d -- (7th Cir. Feb. 21, 2013), the district court applied *Rogers* to dismiss a Lanham Act claim based on the defendant's film title *50/50*, where the title referred to a character's chances of cancer survival and *not* to the plaintiff's musical group "Phifty-50."[10]

*Fourth*, the two out-of-circuit decisions on which Plaintiff bases its argument both premise their conclusions on manifestly incorrect interpretations of controlling circuit law.  In

---

[10] Although the parties in *Eastland Music* agreed that the *Rogers* test applied to the plaintiff's claims, they obviously disagreed as to whether the defendants had satisfied the test. Nevertheless, the court held on a motion to dismiss that "[a]fter reviewing the disputed movie and its packaging, there is no question that the '50/50' title has some artistic relevance to the content of the movie," and that the plaintiff "has not plausibly pled any possibility of confusion between the movie and [plaintiff's] musical group."  *Id.* at *3.

*Rebelution, LLC v. Perez*, 732 F. Supp. 2d 883 (N.D. Cal. 2010), the court held that *Rogers* did not apply to a trademark claim that competing *titles* of the parties' respective musical albums were confusingly similar.  *See id.* at 886 (citing *Rogers*, 875 F.2d at 999 n.5).  That holding has no application here, as the instant case does not involve a claim of confusing similarity between two literary or motion picture titles.[11]

The *Rebelution* court also stated that the *Rogers* test would not apply unless the plaintiff's mark had attained such "cultural significance" that it has "become an integral part of the public's vocabulary."  *Id.* at 887 (citing *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002)).  But that interpretation of *Rogers* was not even a correct statement of Ninth Circuit law at the time it was made.  Subsequent to its decision in *Mattel*, the Ninth Circuit squarely held in *E.S.S. Entertainment*, *supra*, that there is no requirement under the *Rogers* test that the plaintiff's mark have attained any particular prominence or cultural significance.  *See* 547 F.3d at 1097-98 (applying *Rogers* and holding that the First Amendment protected a videogame's depiction of a fictional strip club that bore some resemblance to the plaintiff's strip club, even though there was no allegation that the plaintiff's club was iconic or culturally significant); *see also Stewart Surfboards, Inc. v. Disney Book Group, LLC*, 2011 U.S. Dist. LEXIS 155444, at *7-8 (C.D. Cal. May 11, 2011) (explaining why *Rebelution* is inconsistent with the Ninth Circuit's application of the *Rogers* test in *E.S.S. Entertainment*).

---

[11] Plaintiff's discussion on page 8 of its Opposition is thus beside the point.  The exception that *Rogers* recognizes for cases involving confusingly similar literary titles – which serve as labels for the literary works and thus act as source identifiers in a way that Warner Bros.' use of the phrase "clean slate" within the Film does not – simply has no relevance here.  The title of Warner Bros.' motion picture was not "Clean Slate," and Plaintiff does not allege that Warner Bros. has used "Clean Slate" as the name or title of any work or that Plaintiff is the author of any expressive work with the title "Clean Slate."

In *Masters Software*, the district court relied on a similarly misguided reading of Ninth Circuit law, incorrectly limiting *Rogers* to situations where a "well-known senior user" sues a junior user who intends to refer to the senior user.  725 F. Supp. 2d at 1306.  Like the *Rebelution* court, the court in *Masters Software* inexplicably failed to mention the Ninth Circuit's controlling decision in *E.S.S. Entertainment*, even though it pre-dated by two years the 2010 *Masters* and *Rebelution* decisions.[12]

**Finally**, Plaintiff's proffered rule that the First Amendment provides no protection against reverse confusion claims based on expressive works is illogical and devoid of common sense.  By definition, a reverse confusion case involves a claim by a senior user of the mark who has made a smaller, more limited use of the mark than the larger, junior user.  Plaintiff's proposed rule would mean that a small, relatively unknown trademark owner, claiming rights in a mark that few people have ever heard of, would enjoy monopoly power over the use of certain words in expressive works – power that the First Amendment plainly denies to the owners of famous, household-word trademarks.  If the First Amendment *prevents* the owners of strong and famous marks like "Barbie" or "Tiger Woods" (*see* Opp. at 6) from controlling the expressive speech of others, there is no rational basis for holding that the First Amendment freely *permits* the owners of more obscure marks to dictate the expressive speech of others.

Such a rule, indeed, would be disastrous in practice.  Under such a legal regime, it would be hard to imagine how Warner Bros. possibly could describe the fictional software that Catwoman desires in *The Dark Knight Rises* without exposing itself to "gotcha!" trademark lawsuits from plaintiffs asserting reverse confusion theories – as a search of the online database

---

[12] The court in *Webceleb* likewise observed that the Ninth Circuit has "specifically rejected" the argument that *Rogers* only applies where the defendant intends to refer to a well-known mark that has cultural significance.  *See* RJN, Ex. D, slip op. at 7-8 (citing *E.S.S. Entertainment*).

of the U.S. Trademark Office readily confirms.  Under Plaintiff's proposed rule, using "fresh start" instead of "clean slate," for instance, would have opened up Warner Bros. to potential trademark suits by the owners of numerous federal trademark registrations for FRESH START. *See*, *e.g.*, <http://tess2.uspto.gov> (trademark reg. nos. 4238788, 4238793, 3910949).[13]

As Warner Bros.' showed in its Motion, the Complaint allegations by themselves satisfy the artistic relevance prong of the *Rogers* First Amendment test because they make clear that the phrase "clean slate" was used as "[p]art of the plot of *The Dark Knight Rises*."  *See* Cmplt. ¶ 19. Plaintiff does not even attempt to argue that Warner Bros.' use of "clean slate" is explicitly misleading, nor could it.  Because Warner Bros.' use of the phrase as part of the Film's artistic expression is fully protected by the First Amendment, Plaintiff's claims must be dismissed.

## 2.  The First Amendment Protects The Web Site Promotions To The Same Extent As The Motion Picture.

Plaintiff essentially ignores the wealth of authority cited by Warner Bros. in support of the well-settled rule that, where advertisements for an expressive work refer to or depict the content of the work, they are not treated as "standard commercial speech" (Opp. at 9) but instead are protected under the First Amendment to the same extent as the underlying expressive work. *See* Motion at 16-18.  Plaintiff's token effort to distinguish these cases consists of its assertion that the websites listed in the Complaint – <www.rykindata.com> and <rykindata.tumblr.com> (*see* Cmplt. ¶¶ 22-23) – are "novel" in that they were "deceptively designed" to look like "real websites of Rykin Data."  (Opp. at 9)  Not only is that assertion unsupported by even a single

---

[13] Likewise, using "new life" instead of "clean slate" would have risked trademark suits by the owners of numerous federal registrations for NEW LIFE.  *See*, *e.g.*,, <http://tess2.uspto.gov> (trademark reg. nos. 4276556, 4161751, 4041972).  Similar dangers would have lurked had Warner Bros. instead chosen "new beginnings," "square one," or "new start."  *See*, *e.g.*,, <http://tess2.uspto.gov> (trademark reg. nos. 339698, 3222343, 4178611, 4175648, 4170990, 3521295, 1424412).

13

case citation, but it also ignores the content of the websites themselves.  "Rykin Data" is not a real company with real products; it is a wholly fictional entity that is identified in *The Dark Knight Rises* as the creator of the software program that Catwoman is trying to obtain (a fact that Plaintiff itself illustrates at page 15 of its Opposition).[14]

The websites in question contain numerous other indicators that they are fictional recreations of the Gotham City universe depicted in the Film and not "real" websites.  *See* Motion at 5-6.[15]  They also use the phrase "clean slate" descriptively, not as a trademark.  The Tumblr website, for example, expressly says that "clean slate" is the "*informal name* for Rykin Data's primary service," and further states that "clean slates are possible" because the software "grant[s] the subject a clean slate within the digital world."  RJN, Ex. C at 2, 3.  Contrary to Plaintiff's suggestion, the websites do not "encourage" any commercial transaction (other than seeing the Film).  They plainly do not allow for the "purchase of a software product" of any sort.

Plaintiff's fall-back argument, that the Court should not even consider the content of the websites referenced in the Complaint (Opp. at 10), is unfathomable.  Plaintiff offers no legitimate reason why it declined to attach printouts of the websites to its Complaint.  In order to have a sufficient basis under Fed. R. Civ. P. 11 to allege that the websites caused "irretrievable injury" to its business, Plaintiff surely must know what the websites said.  *See Fred A. Smith*

---

[14] While beyond the scope of a motion to dismiss, it must be noted that Plaintiff misleadingly persists in proclaiming that Warner Bros. "featured" the fictional software program on these websites (Opp. at 2, 4, 7), even though Plaintiff's counsel has known since at least October 2012 that Warner Bros. neither owns the websites referenced in the Complaint nor created their content.  Plaintiff also is well aware that the "Rykin Data" web page, which could only be reached by clicking through several links from a "Dew Gotham City" website sponsored by PepsiCo, received a relatively tiny number of hits – only about 27,000 worldwide.

[15] These references include images of fictional police reports concerning Selina Kyle (Catwoman) similar to those Bruce Wayne reviews in the Film, a fictional police file labeled "Cat Burglar Investigation," a fictitious software patent naming as the inventor "A. Heiberger, Gotham City," and an endorsement from a fictional Gotham City Better Business Bureau (BBB).  *See* RJN, Exhibits B and C.

*Lumber Co. v. Edidin*, 845 F.2d 750, 751-52 (7th Cir. 1988) (discussing a plaintiff's pre-filing duty to investigate the factual basis of its claims).  Yet Plaintiff apparently would prefer to make extravagant allegations about the content of those sites while denying the Court the opportunity to examine that content for itself.

The website printouts are clearly relevant to the Court's consideration of Plaintiff's allegations, and Plaintiff notably does not dispute in any way the accuracy of the exhibits submitted with Warner Bros.' Request for Judicial Notice.  It is well established that a court may consider documents that are central to the plaintiff's claim but omitted from the complaint.  *See* RJN at 1-2.  Indeed, one of the chief benefits of the incorporation-by-reference doctrine is to prevent a plaintiff from doing precisely what Plaintiff is attempting to do here – evade dismissal "by failing to attach to [its] complaint a document that prove[s] [its] claim has no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

## III.   CONCLUSION

Because Plaintiff's claims are barred by the First Amendment as a matter of law, and because in any event there is no plausible claim for trademark infringement that can be asserted based on descriptions of a fictional software program in *The Dark Knight Rises*, amendment of the Complaint would be futile and the action should be dismissed with prejudice.  *See Park v. City of Chicago*, 297 F.3d 606, 612-13 (7th Cir. 2002).  Accordingly, Warner Bros. respectfully requests that the Court grant its motion to dismiss without leave to amend.

Dated:  February 28, 2013                    Respectfully submitted,

                                            JENNER & BLOCK LLP


                                            By ____/s/ Andrew J. Thomas_____
                                            Attorneys for Defendant
                                            WARNER BROS. ENTERTAINMENT INC.

15

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of February, 2013, a copy of the foregoing

Defendant Warner Bros. Entertainment Inc.'s Reply Memorandum in Support of Motion to

Dismiss was filed electronically and served on counsel for all parties via a Notice of Electronic

Filing through the CM/ECF system.

/s/  Keith V. Porapaiboon